(109 App. Div. 702)

### CITY OF NEW YORK v. A. T. STEWART REALTY CO.

(Supreme Court, Appellate Division, First Department.    December 15, 1905.)

1. MUNICIPAL CORPORATIONS — BUILDINGS — REGULATION — ORDINANCES—CONSTRUCTION.

New York Building Code, § 105, relating to fireproof buildings, provides that no woodwork or other inflammable material shall be used in any of the partitions, furrings, or ceilings in any fireproof building, except the doors and window frames in certain buildings less than 12 stories high, and that, when the building exceeds 12 stories, the floor surfaces shall be of stone or similar incombustible material, or the floors and sleepers may be of wood treated by some process approved by the board of buildings to render same fireproof, and that all inside window frames and sash, and other "interior finish" may be of wood covered with metal, or of wood treated with some fireproofing process. *Held*, that the words "interior finish" related to the permanent structure, and that the section did not require trade fixtures used in a fireproof building over 12 stories high to be covered with metal or treated with a fireproofing process.

2. SAME—BUILDING SUPERINTENDENT—FIXTURES—ERECTION.

Greater New York Charter. Laws 1901, p. 183, c. 466, § 411, giving the building superintendent authority to pass on any question relating to the mode, manner of construction, or materials to be used in the erection or alteration of any building or other structure, and to require that such mode, construction, or material shall conform to the full intent of the provisions of the chapter and the rules established by the president of the borough, did not authorize such superintendent to determine that movable trade fixtures in a department store were part of the construction of the building and must conform to the requirements of the Building Code.

Appeal from Special Term, New York County.

Suit by the city of New York against the A. T. Stewart Realty Company to enjoin defendant, its contractors, servants, agents, and employés, from maintaining, allowing, placing, or erecting or suffering to exist in a certain building any dwarf partitions, shelves, platforms, cases, and counters constructed of wood not covered with metal or treated with some process approved by the superintendent of buildings to render the same fireproof, and directing the removal of such partitions, etc., now in the building.    From an order granting such relief, defendant appeals.    Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and HOUGHTON, JJ.

Job E. Hedges, for appellant.
Theodore Connoly, for respondent.

LAUGHLIN, J. The action is brought to restrain alleged violations of the Building Code. The defendant has nearly finished the construction of a building 217 feet and 6 inches in height, consisting of 14 stores, covering the entire block bounded by Broadway, Fourth avenue, Eighth, and Ninth streets. It is to be used by the firm of John Wanamaker for a retail department store business. Following close on the heels of the construction work, it appears that the building is being fitted up for the purposes of said retail business. It does not appear whether that is a lease, or, if so, what are its terms. Nor does it appear whether the defendant is doing any of the work incident to putting in the trade fixtures or contributing thereto. It does appear, however, that the firm of John Wanamaker has already expended upwards of $100,000 in fitting the building up with the trade fixtures of which complaint is made. The provisions of section 105 of the Building Code, defining a fireproof building and prescribing the material and method of construction, are as follows:

"Sec. 105. Fireproof Buildings. Every building hereafter erected or altered, to be used as a hotel, lodging-house, school, theatre, jail, police station, hospital, asylum, institution for the care or treatment of persons, the height of which exceeds thirty-five feet, excepting all buildings for which specifications and plans have been heretofore submitted to and approved by the department of buildings, and every other building the height of which exceeds seventy-five feet, except as herein otherwise provided, shall be built fireproof; that is to say, they shall be constructed with walls of brick, stone, Portland cement concrete, iron or steel in which wood beams or lintels shall not be placed, and in which the floors and roofs shall be of material provided for in section 106 of this Code. The stairs and stair case landings shall be built entirely of brick, stone, Portland cement concrete, iron or steel. No woodwork or other inflammable material shall be used in any of the partitions, furrings, or ceilings in any such fireproof buildings, excepting, however, when the height of the building does not exceed twelve stories nor more than one hundred and fifty feet. the doors and windows and their frames, the trims, the casings, the interior finish when filled solid at the back with fireproof material, and the floor boards and sleepers directly thereunder, may be of wood, but the space between the sleepers shall be solidly filled with fireproof materials and extend up to the under side of the floor boards. When the height of a fireproof building exceeds twelve stories, or more than one hundred and fifty feet, the floor surfaces shall be of stone, cement, rock asphalt, tiling or similar incombustible material, or the floors and sleepers may be of wood treated by some process approved by the board of buildings to render the same fireproof. All outside window frames and sash shall be of metal, or of wood covered with metal. The inside window frames and sash, doorstrim and other interior finish may be of wood covered with metal, or of wood treated by some process approved by the board of buildings to render the same fireproof. All hall partitions or permanent partitions between rooms in fireproof buildings shall be built of fireproof material and shall not be started on wood sills, nor on wood floor boards, but be built upon the fireproof construction of the floor, and extend to the fireproof beam filling above. The tops of all door and window openings in such partitions shall be at least twelve inches below the ceiling line."

The complaint is confined to alleged violations of this statute regulating the material and construction of "interior finish," other than the inside windows, window frames, sash, doors, and trim. The learned counsel for the appellant contends that the dwarf partitions, shelves, platforms, cases, and counters, of which complaint is made, are not part of the permanent structure, but are merely movable

trade fixtures, and do not constitute "interior finish" within the purview of the statute. We are of opinion that this section of the Building Code only applies to the permanent structure. It was neither designed to regulate the use of buildings nor temporary changes and alterations, not materially affecting the permanent outside or partition walls, floors, or ceilings, made for the purpose of conducting a particular business therein, nor to prevent the use of movable trade fixtures necessary or appropriate for such business. It was evidently intended to insure the construction of fireproof walls, ceilings, floors, and all finish, exterior and interior, forming a permanent part thereof. It is manifest that the object was to guard against the weakening of the walls, floors, and ceilings by the combustibility of any part of the material or their construction. The sentence containing the words "other interior finish" clearly shows that they relate only to interior finish bearing the same relation to the permanent structure as that specifically designated. The interior finish specifically named in the same sentence forms part of the permanent structure. The operation of the words "other interior finish" must therefore be confined to interior finish in the strict sense of the words, which limits them to those parts of the permanent structure known as interior finish. The construction of which complaint is made is all store or movable trade fixtures specially designed to facilitate the conducting of the retail department store business in the building conveniently and economically. None of it was included in the plans and specifications filed and approved by the building department under which the building was constructed.

It is also alleged and contended by the respondent that section 411 of the charter (Laws 1901, p. 183, c. 466) conferred on the superintendent of buildings authority to control the movable trade fixtures to be used in buildings; that pursuant to such authority he declined to approve of these fixtures unless they are covered with metal or are first treated by some process approved by the board of buildings to render them fireproof; and that the injunction order can be sustained on this ground, even though we decide adversely to his contention as to interior finish. That section is so long that we refrain from quoting it. It is true it does confer authority on the superintendent of buildings—

"To pass upon any question relative to the mode, manner of construction or materials to be used in the erection or alteration of any building or other structure * * * and to require that such mode, manner of construction or materials shall conform to the true intent and meaning of the several provisions of this chapter and of the laws and ordinances aforesaid, and the rules and regulations established by the president of this borough."

It is not essential that we should now decide whether the superintendent could be given authority over movable trade fixtures. It is quite clear that the authority intended to be conferred by this section mainly relates to the exercise of his judgment on questions of fact as to whether material sought to be used is of the description and quality required. He is not vested with authority to decide, as he has attempted to do in this case, that movable trade fixtures are part of the permanent construction of a building and must conform to the

requirements of law applicable thereto. If there be any statute, ordinance, or regulation giving him jurisdiction over movable trade fixtures, it has not been brought to our attention, and it is evident that he did not assume to act thereunder.

It follows that the order should be reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.

(109 App. Div. 722)

BURKE v. MANHATTAN RY. CO.

(Supreme Court, Appellate Division, First Department. December 15, 1905.)

1. MASTER AND SERVANT—PLACES OF WORK—NEGLIGENCE.

A railway company is negligent in permitting a hole to remain in a floor over which employés are to pass in the prosecution of their work.

2. SAME—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.

Where an employé did not know of a hole in the floor, and was engaged in pulling a truck, walking backward when he was injured, his contributory negligence was for the jury.

3. SAME—ASSUMPTION OF RISK.

An employé, engaged in pulling a truck without a rope and walking backward, did not assume the risk of a defective flooring in which his foot might catch, of which he had no knowledge.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 551, 584.]

4. SAME—DIRECTION OF FOREMAN.

Where an employé had no knowledge of any likelihood of his stepping into a hole in the floor and catching his foot, it was for the jury whether he was negligent in obeying the directions of his foreman to pull out a truck.

5. SAME—PROXIMATE CAUSE OF INJURY.

Where an employé, engaged in pulling a truck, was injured by his foot catching in a hole in the floor, his failure to use a rope in pulling the truck cannot be said to be the proximate cause of the injury.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

