Saul Price, J.
Plaintiffs, lessees of a co-operative apartment, sue the co-operative apartment corporation to recover $435 as damages. The “ sleepers ” and underflooring in the bedroom of plaintiffs’ apartment rotted and required replacement. The rotted “ sleepers ” and underflooring caused the parquet flooring of the bedroom to buckle and create a ‘ ‘ wavy ’ ’ effect. *589 “ Sleepers ” are 2 inch by 4 inch wooden parts to which under-flooring is attached. These “ sleepers ” are situated on the base of the ceiling of the apartment beneath the parquet floors of plaintiffs’ apartment.
Upon proper and adequate notice and demand for repairs, the lessor corporation failed to repair the condition. The lessees thereupon spent $435 in replacing the rotted underflooring and sleepers.
The stockholder lessees contend the defendant co-operative corporation was bound by a covenant, specifically paragraph 2, of the proprietary lease executed between the parties, to make such repairs; that failure to do so caused the defendant to breach its covenant.
Paragraph 2 of the proprietary lease reads in pertinent part: “ Lessor shall keep in good repair the foundations, sidewalks, walls, supports, beams ”.
It is the contention of the defendant that a co-operative apartment corporation has the obligation to repair and maintain the structure and structural parts; that it need only repair those facilities of the building used in common by all lessees. The co-operative lessor maintains that “ sleepers ” and underflooring are neither structural parts of the building nor “beams and supports ” as stated in the proprietary lease.
The crux of the problem is: Is the repair of the ‘ ‘ sleepers ’ ’ and underflooring the responsibility of the co-operative corporation or the proprietary lessees?
It is important that the relationship between the plaintiffs and the defendant here to be defined to determine which party is obligated to make this repair.
The form of co-operative development most commonly employed, particularly in the Metropolitan area, is the co-operative apartment corporation (Isaacs, To Buy or Not to Buy: That is the Question — What is a Cooperative Apartment? 1958, Record New York City, BA203). Such a corporation is subject to the general provisions of the Cooperative Corporations Law (Lazar v. Knolls Co-op. Section No. 2, 205 Misc. 748). It is usually organized as a stock corporation for the purpose of obtaining an apartment building to be operated on a co-operative basis (Whitebook, The Cooperative Apartment, 9 The Practical Lawyer 25 [1963]).
Under this plan the corporate entity holds title to all the premises (4 Powell, Real Property, 1Í631, p. 720). The prospective tenant then purchases stock in the co-operative corporation, the number of shares allocated proportionately to the value of *590 the apartment to be occupied (Note, Co-operative Apartment Housing, 61 Harv. L. Rev. 1407,1408, [1948]).
By virtue of his stock ownership, a purchaser is entitled to a 1 ‘ proprietary lease ” (1 American Law of Property, § 3.10 [Casner ed., 1952]; Bernstein, Practical Problems in the Organization, Acquisition, Financing and Operation of Real Estate Cooperatives, N. Y. U. 18th Institute on Fed. Taxation, 89 [I960]).
The plaintiff lessees, Jesse Susskind and Frances Susskind, purchased 275 shares of capital stock of the defendant corporation. The defendant then, on June 1,1960, entered into a “ proprietary lease ” with the plaintiffs as owners of its corporate stock. The execution of a “ proprietary lease ” from the owning corporation to the stockholder desiring to be a tenant is vital (4 Powell, Real Property, p. 727, supra). . This is an important instrument to the purchaser, for, without it, he has no right of occupancy of his apartment. Stock ownership alone will not suffice (Smith, A Suvey of the Legal Aspects of Cooperative Apartment Ownership, 16 Univ. of Miami L. Rev. 305 [1961]).
In the present situation, the terms embodied in the ‘ ‘ proprietary lease ” and its legal meaning determine the interest acquired by the plaintiffs in the premises in question (Tompkins v. Hale, 172 Misc. 1071; Matter of Miller, 173 Misc. 347). Thus, the ‘1 proprietary lease ’ ’ will characterize the relationship between the parties before this court (Vernon Manor Co-op. Apts., Section I v. Salatino, 15 Misc 2d 491).
In legal theory, a corporation is an entity distinct and separate from its shareholders, no one of whom has a right to receive legal title to any specific property of the corporation (1 American Law of Property, § 3.10, supra). In an apartment co-operative, then, the corporation is sole owner of the land and building (4 Powell, Real Property, supra, 1T633.il). It is the shares of the corporation that are sold, and, despite a vernacular use to the contrary, the apartment is not sold but leased under a so-called proprietary lease (People ex rel. McGoldrick v. Sterling, 283 App. Div. 88). The lessee of the proprietary lease is in much the same position as any other tenant under the usual leasing arrangement. By the “proprietary lease” the shareholder tenant acquires a right to occupy a particlular apartment. He is only a lessee and his property rights are restricted (Vogel, Co-op Apartment, Appendix A, §§ 5, 6, 13,15, 18). The nature of his tenancy is a leasehold coupled with forfeiture provisions, usually in the nature of a right of re-entry by the co-operative corporation (4 Powell, Real Property, supra, V 633.13).
*591 The defendant corporation, then, in law, is markedly different from its shareholders because of its corporate qualities, as is ownership of the corporate realty. The plaintiff shareholders are lessees of the premises in much the same position as any other tenant under the usual leasing arrangement. They are not owners but third parties having distinct rights against and distinct obligations toward the defendant owner (People ex rel. McGoldrick v. Sterling, supra).
Some courts, for the very limited purpose of enforcing restrictive plans under which co-operative apartment houses are constructed and leased, have referred to the lessee as an owner of the co-operative apartment (Penthouse Props. v. 1158 Fifth Ave., 256 App. Div. 685). Others have regarded the lessee as a title holder to permit him to.bring dispossess proceedings to recover possession of the co-operative apartment (Curtis v. Le May, 186 Misc. 853). However, a landlord is defined as one entitled to the rent for use and occupancy of any housing accommodation. Thus, a stockholder tenant of an apartment may be a “ landlord ” to a party in possession of premises leased to the aforementioned tenant stockholder (People ex rel. McGoldrick v. Sterling, supra).
Such decisions, however, have no effect on the law that an estate measured by a definite number of years, such as a leasehold of a co-operative apartment, is personalty and not realty (Despard v. Churchill, 53 N. Y. 192; Matter of Ehrsam, 37 App. Div. 272; Matter of Althause, 63 App. Div. 252, affd. 168 N. Y. 670) and the fact that stock ownership is prerequisite to the procurement of the lease does not affect the legal classification of these assets as personal property (Surrogate’s Ct. Act, § 202, subds. 1, 8; Matter of Miller, 205 Misc. 770).
Furthermore, the courts have declared the relationship between a co-operative corporation and its stockholder to be one of landlord and tenant in allowing the former to maintain summary proceedings against its tenant shareholder (Brigham Park Co-op. Apts., Section 4 v. Lieberman, 158 N. Y. S. 2d 135; 1990 Seventh Ave. Co-op. Corp. v. Edwards, 133 Misc. 831).
This court, in examining the law applicable to the instant situation, must conclude that the relationship between the plaintiffs and the defendant is one of landlord and tenant.
The attorney for the. co-operative corporation, who also drew up the “proprietary lease ” in question, relied on the law of condominium in his off-the-record opening statement and in numerous courtroom conferences. After trial, counsel submitted to this court the condominium statute wherein he would like the *592 court to infer that the law of condominium applies to the instant ease.
A condominium may be defined generally as a system of separate ownership of individual units in a multiple-unit building (4 Powell, Real Property, 1Í 631, supra). The requirements' for qualifying as a condominium are specifically provided for in the law and must be complied with strictly (Schlitt, History of Condominiums, Condominiums Symposium Pamphlet, 1962).
The statute providing for condominium ownership of real property is article 9-B, Condominium Act, of the Real Property Law, which states in part: “ § 339-g. Status of units. Each unit, together with its common interest shall for all purposes constitute real property”. Subdivision 15 of section 339-e reads as follows: “ ‘ Unit owner ’ means the person or persons owning a unit in fee simple absolute.” Thus, a condominium unit is real property while an ordinary co-operative apartment is classified as personalty (Matter of Miller, supra).
Section 339-0, “ Contents of deeds of units ”, in effect requires the description in the deed to a unit to contain all data which may be necessary for the proper identification of that unit (Schlitt, The History of Condominiums, supra) and section 339-s, “ Recording ” provides that the deed, or any instrument affecting any unit, must be duly recorded to be valid.
Basically in a condominium, each purchaser, by deed, receives a fee simple in an apartment and an undivided interest in the common areas of the building.
It is noteworthy that a condominium conveys ‘ ‘ units ’ ’ by “ recorded deeds” while an ordinary co-operative leases “ apartments ” to shareholder lessees by “ proprietary leases ”. Unlike a co-operative, management of a condominium does not have the sword of summary proceedings. A defaulting unit owner submits his unit to a lien in favor of his co-owners, which lien may be foreclosed in the same manner as a mortgage (Dukess, Representing the Developer of Condominiums, Condominiums Symposium Pamphlet, 1962).
A corporate co-operative thus indicates an entity holding title to all the premises and granting rights of occupancy to particular apartments. The condominium, on the other hand, refers specifically to schemes of individual ownership of individual apartments organized pursuant to statutory authority (Freedman and Herbert, Community Apartments: Condominium or Stock Cooperative? supra).
Counsel for defendant was far afield when he proposed that the law of condominiums be applied to the present situation. The ‘ ‘ proprietary lease ’ ’ introduced into evidence before me creates *593 the standard relationship of landlord and tenant. If the law is to recognize distinctions between proprietary leases and other leases, it is for the Legislature or the court of last resort (Braislin, Porter & Baldwin v. Sawdon, 68 N. Y. S. 2d 774).
The relationship of landlord and tenant is created by a contract in the form of a lease (Stern v. Equitable Trust Co., 238 N. Y. 267). The “ proprietary lease ” in question recites that the lessor is the owner of the land and the building and the lessee agrees to pay as rent an amount computed upon the annual cash requirements for the operation of the premises. The covenants of the lessor and the lessee are those usually found in apartment leases and pertain to subletting, assigning, summary dispossess, house rules, etc.
A construction of the terms of this ‘‘ proprietary lease ’ ’ will point out the intent of the parties with regard to repair of “ sleepers ” and underflooring.
The ‘ ‘ proprietary lease ” agreement between the plaintiff stockholder and defendant corporation states in paragraph 19: “ The Lessee shall keep the interior of the apartment in good repair ”. A tenant who covenants to keep the premises in good repair is bound by his covenant and must do so (Lehmaier v. Jones, 100 App. Div. 495). The plaintiff lessee, then, was bound by his covenant, but what did he covenant to repair?
If any doubt exists as to the construction of clauses of the lease, the court may resort to surrounding facts and circumstances to determine the meaning intended by the parties (Ducker v. Del Genovese, 93 App. Div. 575). The interpretation given by the parties themselves to their contract as shown by their acts will be adopted by the court, and to this end not only the acts but the declarations of the parties may be considered (3 Williston, Contracts [Rev. ed.], § 623).
In a letter, dated November 6, 1963, addressed to the lessees of the co-operative building, I, Jerome Biker, sponsor of the co-operative plan, maker of the lease, and president of the co-operative corporation, said in part: ‘ ‘ As a tenant-owner, the entire interior of your premises is your responsibility. (Everything that is visible to the eye.) ”
The foregoing letter may be accepted in evidence for the purpose of construing the contract (Vogel v. Pathe Exch., 234 App. Div. 313). Moreover, it is a well-established rule that if there is any uncertainty or ambiguity it is to be construed against the person by whom the lease was prepared (Eighteenth St. Realty Corp. v. Maxthan Realty Co., 233 App. Div. 687).
The plaintiff lessee, therefore, in agreeing to ‘ keep the interior of the apartment in good repair ” covenanted to repair *594 only the visible parts of the leased premises. Furthermore, such covenants are limited in scope to ordinary repairs only. Covenants of a lessee to repair have been held not to include structural changes or extraordinary and unforeseen building alterations (Second United Cities Realty Corp. v. Price & Schumacher Co., 242 N. Y. 120).
There are no restrictions or limitations to the words “ supports ’ ’ and ‘ ‘ beams ’ ’ in paragraph 2 of the ‘ ‘ proprietary lease ”, the co-operative’s covenant to repair. The word “ support ” defined by Webster’s New International Dictionary of the English Language [2d ed., Unabridged, 1955] is “To hold up or in position; to serve as a foundation or a prop for ”. The “ sleepers ” and underflooring are beams and the supports for the parquet flooring. Under the provisions of paragraph 2 of the lease, above quoted, the co-operative landlord, having obligated itself to keep in good repair the “supports” and “beams”, was required to replace the rotted sleepers and underflooring.
“Sleepers ” and floor boards form a part of the permanent structure (City of New York v. Stewart Realty Co., 109 App. Div. 702) and their repair or replacement, as beams and supports, would result in a substantial structural reconstruction (Havens v. Hartshorn, 184 Misc. 310).
The corporate landlord has conceded that it was bound to make all structural repairs. However, a construction of the lease agreement clearly indicates that the parties intended that the co-operative corporation make these repairs whether or not they are of a structural or nonstruetural nature.
A landlord is under a duty to keep in repair all parts of the building, whether or not demised, and whether or not used in common by all tenants thereof. Subdivision 1 of section 78 of the Multiple Dwelling Law provides in part: £ ‘ Every multiple dwelling, including its roof or roofs, and every part thereof and the lot upon which it is situated, shall be kept in good repair. ”
At common law, there was no duty resting on the landlord of an apartment to repair rooms demised (Altz v. Leiberson, 233 N. Y. 16). The Multiple Dwelling Law has thus changed the common-law rule and shifted the obligation to repair from the tenant to the landlord. As Cabdozo, J., said in Altz v. Leiberson (supra, p. 18): “ The legislature has said that the duty shall extend, not only to some parts but to all * * *. We are not at liberty to confine it to those parts of the building not included within the premises demised. ”
The purpose of the Multiple Dwelling Law, in the case of a failure of the landlord to repair any part of a multiple dwelling, *595 was to impose a liability for the benefit of tenants and their families (Cullings v. Goetz, 256 N. Y. 287). A number of recent decisions have been held to impose upon the landlord liability only for injuries received by a tenant as a result of the negligent breach of this statutory duty (Rodriquez v. Levin, 36 Misc 2d 239; Becker v. Manufacturers Trust Co., 262 App. Div. 525; Goodstein v. Milmo Realty Corp., 8 N. Y. S. 2d 243).
Basically, the statute confers upon the landlord a duty to repair but the gravemen of an action for a violation thereof is in negligence (Davar Holdings v. Cohen, 255 App. Div. 445, affd 280 N. Y. 828).
By statute, therefore, a duty was placed upon the defendant corporate lessor to make the repairs in question. However, its liability for failure to do so was in negligence.
In the absence of any agreement between the parties, there is no obligation on the part of a lessor to reimburse the lessee for repairs made by the lessee (Emigrant Ind. Sav. Bank v. One Hundred Eight West Forty-Ninth St. Corp., 255 App. Div. 570, affd. 280 N. Y. 791; Kirshenbaum v. Berson, 19 Misc 2d 787). This is so even though the landlord, by statute, is obligated to repair (Emigrant Ind. Sav. Bank v. One Hundred Eight West Forty-Ninth St. Corp., supra).
Therefore, the plaintiff stockholder is not entitled to reimbursement for repairs made by virtue of the corporate landlord’s failure to comply with its statutory duty.
On the other hand, the landlord may covenant to pay a tenant for repairs or improvements (Smith v. Rector etc. St. Philip’s Church, 107 N. Y. 610) and the law implies an obligation of good faith on the part of the lessor (Trustees of Columbia Univ. v. Kalvin, 250 N. Y. 469).
Paragraph 2 of the proprietary lease states in part: ‘1 All repairs required to be made by the Lessor shall be made at its expense ”. It may be inferred from this covenant that the corporate co-operative intended to reimburse its lessee for any repairs made in its behalf.
Upon breach of a landlord’s covenant to make repairs, the tenant may make the repairs and then sue to recover the cost thereof incurred as a result of the landlord’s breach (Warner Bros. Pictures v. Southern Tier Theatre Co., 279 App. Div. 309; Goelet v. Goldstein, 229 App. Div. 456; Campbell v. Poland Spring Co., 196 App. Div. 331, affd. 233 N. Y. 506; Fenham, Inc., v. Safeway Stores, 76 N. Y. S. 2d 308). In essence, such a suit is based upon breach of a covenant in the lease wherein a landlord, who has covenanted to repair, fails to do so.
*596 Upon the failure of the defendant co-operative corporation, as landlord, to make the repairs in accordance with its obligation under the lease, it was proper for the plaintiff stockholders, as tenants, to make the repairs and to charge the expenses therefor to the landlord.
Judgment accordingly for the plaintiffs in the sum of $435.