OPINION OF THE COURT
Helen E. Freedman, J.
Plaintiff brings this action against defendant apartment cooperative to recover the amount he spent to repair the ceilings of his co-operative apartment. Plaintiff has occupied the apartment in question since November, 1971. In January, 1972 he became a stockholder and a tenant pursuant to a proprietary lease.
*154 The sole issue before the court is whether plaintiff or defendant is responsible for the repair of the ceiling in plaintiff’s apartment.
The events leading to the repair of the ceiling are as follows. Approximately six to nine months after plaintiff took occupancy, bubbles began to appear on the ceiling throughout the apartment. Despite plaintiff’s attempt to remedy the condition, it worsened to the extent that by April, 1974, a portion of the kitchen ceiling about three feet in diameter had become dislodged and was hanging. After that, substantial pieces of the ceiling fell to the floor.
Plaintiff tried for over two years to convince the co-operative to remedy the situation but the board of directors steadfastly refused, maintaining that since the bubbling was not caused by leakage from common pipes, repair was the tenant’s responsibility. The history of the dispute between the parties is documented by a series of letters, in evidence, between plaintiff and agents of defendant, commencing at least as early as September, 1973.
In late 1975 plaintiff hired a contractor to repair the ceilings in the livingroom, bedroom and kitchen. The repairs entailed the installation of a new ceiling — furring strips were installed and sheetrock was fastened to the strips — spackling and painting. Plaintiff’s total expenditure was $1,557.
The undisputed testimony of plaintiff’s expert witness was that the bubbling and falling of the plaster was caused by either the improper application of, or the use of a defective bonding agent.
At the outset it should be noted that the relationship between an apartment co-operative and the various co-operators is that of landlord-tenant. (Esplanade Gardens v Reed, NYLJ, May 9, 1979, p 13, col 3; Susskind v 1136 Tenants Corp., 43 Misc 2d 588; 1990 Seventh Ave. Co-op. Corp. v Edwards, 133 Misc 831; Dunbar Apts. v Nelson, 136 Misc 561.) A stockholder in a co-operative does not own his own apartment, but rents it from the co-operative corporation of which he owns shares (Susskind, supra).
According to both the Multiple Dwelling Law (see § 78), and the Housing Maintenance Code of the Administrative Code of the City of New York (see § D26-10.01 et seq.), an owner or landlord is obligated to maintain his premises in good repair. The duty imposed by the Multiple Dwelling Law and the Housing Maintenance Code extends to painting, plastering *155 and structural repairs in all parts of a building, unless the damage has been caused by the tenant. Ordinarily interior walls and ceiling of apartments are the landlord’s responsibility.
In addition, the Legislature has created a statutory warranty of habitability applicable to all residential leases (see Real Property Law, § 235-b). The language of the statute specifically states:
"1. In every written or oral lease or rental agreement for residential premises the landlord or lessor shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to life, health or safety. * * *
"2. Any agreement * * * waiving * * * rights as set forth in this section shall be void as contrary to public policy.”
There is nothing here which indicates an intention by the Legislature to exempt co-operatives from the ambit of the warranty. (But see 158th St. Riverside Drive Co. v Launay, NYLJ, April 6, 1976, p 9, col 2.) It is not disputable that large chunks of falling plaster constitute a serious threat to the safety of a tenant.
Except for the warranty of habitability, parties are, of course, free to change their statutory and common-law rights and responsibilities by contract. In the instant situation such changes must be derived from the express language of the proprietary lease. The construction of the relevant portions of the proprietary lease here is critical to the determination of the issue at bar, namely who bears the expense of the ceiling repair.
Section 8, setting forth the lessor’s responsibilities, reads as follows: "The Lessor shall keep in good repair the foundations, sidewalks, walls (except interior walls of apartments unless repairs thereto are necessitated by the act or negligence of the Lessor or the failure of the Lessor to make repairs for which it is otherwise responsible), supports, beams, roofs, gutters * * * All such repairs required to be made by the Lessor shall be at the expense of the Lessor, unless the same shall have been rendered necessary by the act or neglect or carelessness of the Lessee”.
*156 Section 10, setting forth the lessee’s responsibilities, reads as follows: "The Lessee shall keep the interior of the apartment in good repair, and the Lessor shall not be held answerable for any repairs in or to the same, unless such repairs shall be made necessary by the act or negligence of the Lessor, or by the failure of the Lessor to make repairs for which it is otherwise responsible.”
The lessor is basically responsible for the foundation, common areas and all of the structural aspects of the building. Beams, supports, roofs, plumbing apparatus and pipes are within the province of the landlord co-operative. The interior of the apartment is the responsibility of the tenant. Were the defect here merely peeling paint or dripping faucets it is beyond dispute that the tenant would be liable for the repairs. However, having established that the deterioration of the ceiling was caused by the use of a defective bonding agent to which the plaster never properly adhered during the construction of the building, it becomes considerably harder to impose the responsibility of repairs on the tenant.
Having determined that the bonding agent attached the plaster to the beams and supports, the court finds that it was. part of the underlying structure of the building. Just as in Susskind, the underflooring was considered part of the structure and thus related to the beams and supports, here the underceiling will be considered part of the structure.
Altough neither of the relevant lease provisions uses the word "structure”, and neither party is, by the lease terms, responsible for structural repairs, the type of repairs required here more closely approximate those for which the lessor is responsible. Moreover, it is well established that any ambiguity is to be interpreted against the party who drafted the lease, here the defendant lessor. (Susskind, supra; Eighteenth St. Realty Corp. v Maxthan Realty Co., 233 App Div 687.)
The court therefore finds that the defendant was responsible for the repairs in question.
It has long been recognized that where a tenant has made repairs which are of an emergency nature, for which a landlord is liable, the tenant may be reimbursed for his expenses. (See Jackson v Rivera, 65 Misc 2d 468; Campbell v Poland Spring Co., 196 App Div 331, affd 233 NY 506.) In any event, the relevant lease provisions specifically provide that repairs for which the lessor is responsible shall be made at the lessor’s expense.
*157 Judgment for the plaintiff in the sum of $1,557.