Asch, J.
(concurring). I concur with the majority to the
extent that I find plaintiff’s motion for summary judgment was properly denied.
The majority has outlined the relevant facts of this case, indicating that the plaintiff initiated this action to recover damages of $5,000, arising out of defendant’s alleged failure to provide adequate heat, that the plaintiff moved for summary judgment and that the defendant cross-moved for identical relief. The court below denied both motions, noting only that “Issues of fact remain which may only be resolved at trial.” My colleagues suggest that “by denying summary judgment to the defendant corporation, the Court below implicitly recognized the applicability of the [breach of warranty] statute to proprietary tenancies since that was the major item of contention of each party.” While plaintiff in his affidavit submitted in support of his motion for summary judgment indicates he is relying upon the breach of warranty statute, and while defendant in its affidavit submitted in support of its cross motion for summary judgment and in opposition to plaintiff’s motion argues that the breach of warranty of habitability statute should not be applied to co-operatives, I believe the subtle complexities of the issue of whether section 235-b of the Real Property Law applies to co-operative corporations are such that no implication can be gleaned from the order on *141 appeal as to whether Special Term was of the opinion that the statute did or did not apply to co-operative corporations.
It is noted by my brethren that, although there is no appellate court authority as to whether section 235-b of the Real Property Law applies to co-operative corporations, three lower court decisions have addressed the question: 158th St. Riverside Drive Co. v Launay (NYLJ, April 6, 1976, p 9, col 2) held that section 235-b of the Real Property Law does not apply to co-operative corporations, Hauptman v 222 East 80th St. Corp. (100 Misc 2d 153) and Laight Co-op. Corp. v Kenney (105 Misc 2d 1001) held that it does. The dispositions in those three cases are, however, as conclusory as they are contradictory.
The relationship of co-operative corporations to their shareholders has not often been defined in law. In Vernon Manor Co-op. Apts., Section I v Salatino (15 Misc 2d 491), Judge James Hopkins, then writing as a County Court Judge, noted (p 494): “This action, based on the construction of the relative rights and liabilities of a cooperative housing corporation and its members, has little precedent in this State. Sparse are the cases treating of the relationship between such a corporation and its member tenants”. Case law dealing with the relationship which exists between co-operative corporations and their shareholders has not greatly expanded since Judge Hopkins observed in Vernon Manor Co-op. Apts., Section I v Salatino (supra, p 494): “A co-operative corporation is defined to be a corporation Tor the cooperative rendering of mutual help and service’, and ‘classed as a non-profit corporation, since its primary object is not to make profits for itself as such, or to pay dividends on invested capital, but to provide service and means whereby its members may have the economic advantage of cooperative action, including a reasonable and fair return for their product and service’ (Cooperative Corporations Law, § 3, subds. [c], [d])”. The concept of a cooperative corporation existing as a not-for-profit entity, organized for the good of its members, not only affords a parity of relationship between shareholder tenant and cooperative corporation, which section 235-b of the Real Property Law seeks to impose in conventional landlord- *142 tenant relationships (Park West Mgt. Corp. v Mitchell, 47 NY2d 316, 325), but clearly provides the shareholder tenant an arsenal of rights not available to the ordinary tenant.
Section 235-b of the Real Property Law essentially codified the rights of the conventional tenant as they had evolved under common law prior to the enactment of that statute (Tonetti v Penati, 48 AD2d 25; Steinberg v Carreras, 74 Misc 2d 32; Morbeth Realty Corp. v Velez, 73 Misc 2d 996; Jackson v Rivera, 65 Misc 2d 468). There is little if any basis for concluding that the Legislature intended to extend the application of section 235-b of the Real Property Law to the sui generis relationship which exists between the co-operative corporation and its shareholders. As the majority has observed, it is nowhere stated in the statute (Real Property Law, § 235-b) that the ameliorative legislation was ever intended to apply to the proprietary lessor-lessee situation.
The relationship which exists between a co-operative corporation and its shareholders “is to be determined from a reading together of the original plan of organization, the prospectus under which stock was offered, the stock subscription agreement and the payments made thereunder, the members’ contract, that is, either the proprietary lease or the occupancy agreement, the certificate of incorporation and the bylaws, and the rules and regulations of the cooperative, provided that the laws of the state are not thereby infringed.” (11 NY Jur, Co-operatives, § 133.) Significantly, none of those items are contained in the instant record on appeal, and thus the plaintiff, without even affording this court an opportunity to assess instruments, which no doubt amply and explicitly detail the rights and nature of the relationship between the parties, would have this court reach beyond such concrete agreements and documents and apply a statutorily implied warranty which in all likelihood and the Legislature only intended should apply to conventional landlord-tenant relationships.
The suggestion made by the majority that since a shareholder of General Motors may sue that corporation for damages arising from the purchase of a defective vehicle, a *143 proprietary lessee should be able to sue his co-operative corporation under section 235-b of the Real Property Law is unpersuasive. In the first place, General Motors is a profit-making entity which seeks to exploit sales potential among shareholders and nonshareholders alike, so the analogy made between a shareholder of General Motors and his corporation and a proprietary lessee and his nonprofit co-operative corporation is inapposite. In the second place, no one questions the right of a proprietary lessee to sue his co-operative corporation; the only question is whether he may rely on section 235-b of the Real Property Law.
The relationship between a co-operative corporation and its shareholders, which is fiduciary in nature, requires the corporate directors to manage the affairs of the corporation so as to carry out its purpose to house its members in a comfortable and efficient manner, and to treat its members in a fair and equitable way (Vernon Manor Co-op. Apts., Section I v Salatino, 15 Misc 2d 491, supra). Given the spectrum of remedies available to a dissatisfied co-operative shareholder which arise from this fiduciary relationship, there is no reason to believe that the Legislature considered it necessary to further protect the co-operative shareholder through application of section 235-b of the Real Property Law.
The majority indicates that “as a matter of sound policy and the proprietary tenant, subject as he is to being ousted for nonpayment of charges * * * [in a summary proceeding], should enjoy whatever benefits flow from the warranty of habitability.” The question, however, is not whether the co-operative shareholder is entitled to assert a breach of the warranty of habitability in a summary proceeding, but whether he is entitled to assert such a breach in any proceeding. Parenthetically, we are not here dealing with a summary proceeding but a plenary action.
Two last points, first, co-operative corporations run the gamut of co-operative brownstones to co-operative housing consisting of thousands of units. The impact of applying section 235-b of the Real Property Law will differ across this broad spectrum of co-operative housing and such a standard of strict liability should not be applied to this *144 varied sector of the housing market without a clear and express mandate of the Legislature.
Second, subdivision 2 of section 235-b of the Real Property Law provides: “Any agreement by a lessee or tenant of a dwelling waiving or modifying his rights as set forth in this section shall be void as contrary to public policy.” In view of the equity interest of co-operative shareholders in the building, they may arrange as between themselves to take responsibility for renovating and upgrading an existing structure to the extent of making it habitable. Under the above-quoted subdivision 2, such agreements between co-operative shareholders would be in violation of the law, as inconsistent with subdivision 1 of section 235-b of the Real Property Law. There are obvious shortcomings in any judicial determination which would limit the right of cooperative shareholders to contract as between themselves as to responsibility for maintenance of their property.
Tierney, J. P., and Riccobono, J., concur in Per Curiam opinion; Asch, J., concurs in a separate opinion.