34

MORRIS GOLDSTEIN et al., Respondents, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Appellants, et al., Defendants.

First Department, February 25, 1986

APPEARANCES OF COUNSEL

*Thomas J. Kavaler* of counsel *(William E. Hegarty, Lisa Pearson* and *James F. Hagney* with him on the brief; *Cahill Gordon & Reindel* and *Ernest J. Williams,* attorneys), for Consolidated Edison Company of New York, Inc., appellant.

*Anthony J. McNulty* of counsel *(Harold M. Foster,* attorney), for Lind-Ric Housing Company, Inc., appellant.

*Jessel Rothman, P. C.,* of counsel *(Allen J. Rothman* with him on the brief), for respondents.

**OPINION OF THE COURT**

Asch, J.

Lind-Ric Housing Company, Inc. (Lind-Ric) is a cooperative housing corporation owning a 21-story fireproof building containing about 175 apartments. The building contains two stairwells as well as elevators. Only the north staircase exits onto the lobby floor. The stairwell is illuminated by an incandescent light bulb in the ceiling on each landing. There is a bannister on one side of the staircase.

Electricity is supplied to the building, including the public areas and apartments, through a master meter system. Lind-Ric pays a wholesale rate for utilities to Consolidated Edison Company of New York, Inc. (Con Ed), and in turn bills the individual tenant stockholders for their proportionate share of the bill. Lind-Ric pays Con Ed once a month and the tenant stockholders remit their utility payments in their monthly maintenance payment to the managing agent. The proportionate share is based upon the number of bedrooms contained in the apartment unit and there is no correlation between usage and an occupant's share of the utility charge.

The Goldsteins are tenant shareholders who purchased 222 shares of common stock of Lind-Ric and executed an occupancy agreement for apartment 13D in October 1963.

On July 13, 1977, between 8:30 and 9:30 P.M., Con Ed's entire electrical power system, serving approximately 3,000,-000 customers, was blacked out. Because of the blackout, all electricity to the building was terminated and power was not

restored until after 10:00 P.M. on July 14, 1977. The termination of power caused the hallways and public staircases to become pitch-dark, halted elevator service and also cut off the building's water supply to all individual apartments, as it depended on an electrical pump.

The staff at the building consisted of a resident superintendent and three porters. The superintendent was on 24-hour call in case of emergencies. The managing agent, Darwood Management Company, took no steps to remedy or mitigate the disruptive effect of the blackout and had no knowledge of any steps taken by the building superintendent. The wife of the building superintendent testified that as a consequence of the blackout, many calls came from building occupants regarding the lack of water and that the superintendent opened a fire hydrant in the street to assist the tenants in obtaining water. While the porters continued their normal duties of collecting garbage from the 20 floors of the building, they (the superintendent, his wife and children) were also helping the elderly residents carry pails of water to their apartments. During the period of the blackout, no emergency lighting, flashlights or candles were placed in the stairwells by the superintendent or porters.

Mr. Goldstein and his wife remained in their apartment on the 13th floor throughout the night of the blackout. At 7:00 A.M. the next morning, finding that there still was no water, Mr. Goldstein dressed and took two jars and a pot, put them in a shopping bag and, with a candle, walked down 13 flights of stairs to the lobby. He then went to a friend's house about a block away to obtain water. He filled and capped the two jars, put them in the pot, put the pot in the shopping bag and then went back to the apartment. Mr. Goldstein lit his candle when he entered the lobby, walked slowly to the staircase, and, holding the bannister with his right hand, with the shopping bag on his left wrist and the candle clutched in his left hand, he began to walk up the 13 flights of stairs to his apartment. At about the third floor, the candle went out and he fell, losing consciousness. A friend later found him and he was taken to Jacobi Hospital. As a result of the accident, Mr. Goldstein suffered fractures of various bones requiring operations, a cerebral concussion, bleeding, contusions and other injuries.

The Goldsteins thereafter brought an action against Con Ed and Lind-Ric, alleging that Con Ed's gross negligence in causing the blackout resulted in Mr. Goldstein sustaining

personal injuries. They alleged that Lind-Ric failed to have emergency or backup artificial lighting equipment and to take measures to provide safe passage for the tenants by the morning after the blackout. Con Ed and Lind-Ric denied the allegations and alleged that the injuries sustained were caused by contributory fault and assumption of the risk on the part of Mr. Goldstein. Con Ed and Lind-Ric asserted cross claims for contribution and indemnification against each other.

Con Ed thereafter moved for summary judgment dismissing the complaint on the ground that the Goldsteins were not its customers for electric service and that Con Ed owed no duty to them. The motion was denied. Special Term held that the Goldsteins' status as shareholders of the cooperative corporation created issues of fact and law which precluded summary judgment.

After a jury trial, Con Ed again moved to dismiss the complaint against it on the ground that it owed no duty to the Goldsteins. The motion was denied. The jury thereafter returned a verdict of $80,000 in favor of Morris Goldstein and $5,000 in favor of his wife, Ruth Goldstein, and apportioned the award 50% against Lind-Ric and 50% against Con Ed. The cross claims of both Con Ed and Lind-Ric were dismissed and costs determined to be borne equally by Lind-Ric and Con Ed. Judgment was entered and Con Ed and Lind-Ric appealed.

Lind-Ric argues that no actionable negligence was proven against it, that it is entitled to judgment over against Con Ed on its cross claim, that the verdict of the jury was contrary to the weight of the evidence, and that the court's charge constituted reversible error warranting a new trial.

■ Con Ed argues that the judgment against it must be reversed on the ground that, as a matter of law, it neither owed nor breached its duty to the Goldsteins because they were not customers of Con Ed for electrical service on the date of the blackout. It is correct in this assertion.

Lind-Ric, the owner of the building, was Con Ed's customer for electricity. A utility's duty to maintain an uninterrupted supply of electricity runs only to its customers and breach of that duty does not give rise to any liability to noncustomers such as the Goldsteins herein. *(See, Moch Co. v Rensselaer Water Co.,* 247 NY 160.) That rule was reaffirmed in another blackout case in which a tenant sought to recover against Con Ed for personal injuries allegedly sustained when he fell on a

common stairway of the apartment building *(Strauss v Belle Realty Co.,* 65 NY2d 399). The Court of Appeals held that, as a matter of public policy, Con Ed was not answerable to the tenant as a result of its negligent failure to provide electric service where its contract was with the building owner, as in the instant case, and concluded: "that in the case of a blackout of a metropolis of several million residents and visitors, each in some manner necessarily affected by a 25-hour power failure, *liability for injuries in a building's common areas should, as a matter of public policy, be limited by the contractual relationship."* (65 NY2d, at p 401; emphasis added.) Similar decisions have been reached in other actions where noncustomers sought to recover from Con Ed for injuries sustained during the blackout. *(Hernandez v Consolidated Edison Co.,* NYLJ, Feb. 17, 1983, p 11, col 1 [Sup Ct, NY County], *affd on opn below* 98 AD2d 602, *affd* 65 NY2d 857; *Crane v City of New York,* NYLJ, Mar. 3, 1983, p 10, col 7 [Sup Ct, NY County], *affd* 99 AD2d 963, *resettled* 101 AD2d 796, *affd* 65 NY2d 859.)

The Goldsteins argue that the ruling in *Strauss (supra)* is distinguishable, as they are tenants/shareholders in a cooperative corporation which owns the building and are contractually obligated to pay their proportionate share of all expenses in connection with the ownership, maintenance and operation of the building. However, said contract is the Goldsteins' occupancy agreement with Lind-Ric and not an agreement with Con Ed to supply electrical service. Only Lind-Ric has a service agreement with Con Ed. Further, in most respects, cooperative shareholders are similar to other tenants as to their rights to the use and occupancy of their apartments. The court in *Suskind v 1136 Tenants Corp.* (43 Misc 2d 588, 590) explained the rights of cooperative tenants/shareholders as follows: "[A] corporation is an entity distinct and separate from its shareholders, no one of whom has a right to receive legal title to any specific property of the corporation (1 American Law of Property, § 3.10, *supra).* In an apartment co-operative, then, the corporation is sole owner of the land and building (4 Powell, Real Property, *supra,* ¶ 633.11). It is the shares of the corporation that are sold, and, despite a vernacular use to the contrary, the apartment is not sold but leased under a so-called proprietary lease *(People ex rel. McGoldrick v. Sterling,* 283 App. Div. 88). The lessee of the proprietary lease is in much the same position as any other tenant under the usual leasing arrangement. By the 'proprietary lease' the

shareholder tenant acquires a right to occupy a particular apartment. He is only a lessee and his property rights are restricted" (43 Misc 2d, at p 590). Further, a tenant/shareholder's ownership interest in the cooperative corporation does not give him an individual right to recover for breach of the corporation's contract. As explained in *New Castle Siding Co. v Wolfson* (97 AD2d 501, 502, *affd* 63 NY2d 782): "Generally, corporations have an existence separate and distinct from that of their shareholders * * * and an individual shareholder cannot secure a personal recovery for an alleged wrong done to a corporation * * * The fact that an individual closely affiliated with a corporation (for example, a principal shareholder, or even a sole shareholder), is incidentally injured by an injury to the corporation does not confer on the injured individual standing to sue on the basis of either that indirect injury or the direct injury to the corporation * * * Where, however, for example, it appears that the injury to a shareholder resulted from the violation of a duty owing to the shareholder from the wrongdoer, having its origins in circumstances independent of and extrinsic to the corporate entity, an individual cause of action may exist for a shareholder of an allegedly wronged corporation". Thus, where, as here, the cooperative corporation and not the tenant/shareholder is the customer of Con Ed, such tenant/shareholder is not entitled to recover for the breach of Con Ed's service agreement with the cooperative corporation. As Con Ed has thus breached no legal duty to the Goldsteins, it cannot be held liable for the injury. Therefore, as to Con Ed, the judgment must be reversed and the complaint dismissed.

██ Lind-Ric also argues that no actionable negligence was proven against it, claiming that the injury was solely the result of the blackout and the fact that Mr. Goldstein attempted to climb the stairs carrying a candle. However, the jury found that Lind-Ric's negligence was the proximate cause of the injury. Specifically, Lind-Ric was negligent inasmuch as its superintendent, delegated to handle emergencies, failed to provide emergency lighting for the stairwells. As late as 12 hours after the power failure began, he still encouraged tenants to use the unlighted stairways in order to fetch water from the fire hydrant which he had opened. The superintendent had created a hazardous situation by permitting the tenants to fill pails and then ascend the darkened north stairway back to their apartments. There were, thus, sufficient facts introduced into evidence by the testimony of the superin-

tendent's wife, Mr. Goldstein and other tenants to submit the issue of negligence to the jury and for the jury to find that Lind-Ric was negligent. The jury had a basis to determine that, under such emergency situation, Lind-Ric, aware of the lack of power, water and light, should have reasonably foreseen that 12 hours after the commencement of the blackout, its occupants would be walking up and down the unilluminated staircases for such a purpose as obtaining water and that one of the tenants could fall in attempting to negotiate such staircases. *(See, e.g., Reider v Whitebrook Realty Corp., 23 AD2d 691.)*

Lind-Ric argues that it is entitled to judgment over against Con Ed on its cross claim based upon the punitive acts or omissions of Con Ed as well as Con Ed's breach of contract in supplying Lind-Ric with electricity. However, there is no provision in Con Ed's service agreement with Lind-Ric or its publicly filed rate schedule that requires a duty to indemnify. Further, the Goldsteins' theory of liability with respect to Lind-Ric derives not from the failure to prevent the extinguishment of the stairwell light, but to allow the stairwell to remain without emergency lighting for over 12 hours, knowing that the tenants were using the stairwell for ingress and egress to obtain water.

In addition, Lind-Ric is not entitled to contribution or partial indemnification from Con Ed since CPLR 1401 states that contribution may be claimed only against "persons who are subject to liability for damages for the same personal injury". Since there is no liability on the part of Con Ed for the injuries of Mr. Goldstein, there can be no liability for contribution. Imposition of contribution would also circumvent the policy goals expressly stated by the Court of Appeals in *Strauss v Belle Realty Co. (supra; see, Crane v City of New York, supra)*.

Lind-Ric lastly argues that the charge constituted reversible error since it omitted Multiple Dwelling Law § 37 (2), which holds that a landlord is not liable for failure to illuminate a stairwell if the light becomes extinguished and remains so without the knowledge or consent of the owner. However, as the superintendent was the agent of the owner, Lind-Ric, and the superintendent was aware of the lack of illumination in the stairwell and permitted, if not encouraged, use of the darkened stairwell, it was proper for the court to fail to charge that portion of the Multiple Dwelling Law.

Accordingly, the judgment of the Supreme Court, Bronx County (Alfred J. Callahan, J.), entered January 2, 1985, upon a jury verdict, which, *inter alia,* granted judgment to plaintiffs in the amount of $85,000 plus costs against defendants Consolidated Edison Company of New York, Inc., and Lind-Ric Housing Company, Inc., apportioned 50% as to each defendant, should be modified, on the law, to the extent of reversing and vacating those portions granting judgment against defendant Consolidated Edison Company of New York, Inc., severing and dismissing the complaint as to said defendant, and otherwise affirmed, without costs.

SULLIVAN, J. P., CARRO, KASSAL and ROSENBERGER, JJ., concur.

Judgment, Supreme Court, Bronx County, entered on January 2, 1985, unanimously modified, on the law, to the extent of reversing and vacating those portions granting judgment against defendant Consolidated Edison Company of New York, Inc., severing and dismissing the complaint as to said defendant, and otherwise affirmed, without costs and without disbursements.