OPINION OF THE COURT
Lewis R. Friedman, J.
Petitioner, the proprietary lessee of a cooperative apartment at 12 East 87th Street in Manhattan, is also the owner of the shares allocated to that apartment. Respondent Steppingstone Management Corporation (Steppingstone) is the managing agent for the building which is owned by 12 East 87th Owners Corporation (the owner). This proceeding was commenced by petitioner pursuant to Administrative Code of the City of New York § D26-51.01 (h) (Housing Maintenance Code [HMC]) to *341 require Steppingstone and the owner to remove the eight class A and class B violations placed by New York City inspectors in her apartment. The issue presented for decision is who is responsible for the removal of the Housing Maintenance Code violations placed at petitioner’s apartment.
Steppingstone moves to dismiss the action since, it contends, the owner has no obligation under the proprietary lease to make the repairs at issue. In essence Steppingstone’s position is that the lease takes precedence over the HMC’s requirement that the owner keep the apartment in good repair. (See, Administrative Code § D26-10.01.) In order to analyze the question it is necessary to ascertain the relationship between the parties.
There is a complex series of relations between the owning corporation of a cooperative apartment building and the "owner” — proprietary lessee of the individual unit. As the Court of Appeals recently noted: "Inseparably joined, neither the corporate nor the leasehold attributes of the relationship can be viewed in isolation from one another” (Fe Bland v Two Trees Mgt. Co., 66 NY2d 556, 563 [1985]). That is, there are cases that emphasize the leasehold, landlord-tenant, nature of the relationship, through an analysis of the proprietary lease, while others emphasize the contractual, shareholder, aspect. (Matter of State Tax Commn. v Shor, 43 NY2d 151, 156 [1977] ["For some purposes it is a lease; for others it is a compact between co-operative corporation and co-operative tenant”].)
Recent cases concerning the operation of the building and the apartments in it have held that the "normal” landlord-tenant role predominates. (See, Star v 308 Owners Corp., 130 Misc 2d 732 [Civ Ct, NY County 1985] [the purchaser of the shares allocated to an apartment has become the "owner” with respect to the nonpurchasing tenant residing in it]; cf. Silverman v Alcoa Plaza Assoc., 37 AD2d 166, 172 [1st Dept 1971] ["a proprietary lease is no different from any other type of lease”].) As one of the earliest cases concerning the rights of a proprietary lessee held: "[a] lessee of the proprietary lease is in much the same position as any other tenant under the usual leasing arrangement.” (Susskind v 1136 Tenants Corp., 43 Misc 2d 588, 590 [Civ Ct, NY County 1964].) It is that leasehold predominant analysis which leads the appellate courts to hold that cooperative, "owning”, lessees are entitled to the same abatements of "rent” or "maintenance” for violations of the warranty of habitability, as are "normal” renting lessees. (Suarez v Rivercross Tenants’ Corp., 107 Misc 2d 135 *342 [App Term, 1st Dept 1981]; see also, Hauptman v 222 E. 80th St. Corp., 100 Misc 2d 153, 155 [Civ Ct, NY County 1979]; Laight Coop. Corp. v Kenny, 105 Misc 2d 1001 [Civ Ct, NY County 1980].)
It is the essential obligation of the "owner” of the property to remove violations from the premises. Multiple Dwelling Law § 78 (1) parallels HMC § D26-10.01 in holding the "owner” "responsible” for keeping its property in good repair. There can, of course, be no doubt that Steppingstone and 12 East 87th Owners Corporation are the "owner” referred to in both Multiple Dwelling Law § 4 (44) and Housing Maintenance Code § D26-1.07 (a) (45). (Star v 308 Owners Corp., supra.) Thus, under traditional leasehold analysis Steppingstone would be required to remove the violations at issue here.
The Department of Housing Preservation and Development (DHPD), a statutory respondent here, argues that the warranty of habitability statute requires that the owner remove the violations as required by the HMC. There is no doubt that the warranty applies to cooperative apartments. (Suarez v Rivercross Tenants’ Corp., supra.) There is no question that the warranty is nonwaivable. (Real Property Law § 235-b.) The question here is whether there can be certain modifications in the operation of the warranty in the case of repairs in a cooperative apartment which the owning tenant has agreed to complete.
Steppingstone cogently argues that a leasehold analysis is too simplistic and unreasonably varies the expected relationship between the parties. The parties here have entered into a 43-year lease which contains detailed provisions concerning the responsibility of the corporation and the owning tenant to do certain repairs. The lease clauses at issue are nearly identical to hundreds of similar provisions this court has seen in other cooperatives. In the context of a long-term proprietary lease, Steppingstone argues, it is important for the parties’ contractual rights to govern. Indeed, it continues, nearly every cooperative lease written requires the tenant, not the owning corporation, to paint the apartment; yet tenants who chose not to comply with their lease obligations could, by the simple expedient of requesting a DHPD inspection, get a violation placed on the building which the owning corporation would be required to remove under Administrative Code § D26-51.01. That would require the remaining cooperators to bear the financial burden which the recalcitrant tenant wrongfully refuses.
*343 The court is required to give effect to the legislation as drafted while applying common sense to the statute. "[A] statute may not be read so literally that it yields in application a nonsensical result.” (People ex rel. McGoldrick v Sterling, 283 App Div 88, 93 [1st Dept 1953].) The court must, therefore, work an accommodation between the interrelated contract and leasehold rights of cooperative tenants, while at the same time harmonizing HMC § D26-51.01 and Real Property Law § 235-b.
The balancing requires the court to direct the respondent Steppingstone to remove the violations as required by the HMC. That is, there is the obligation, at the insistence of the tenant in a proceeding under the HMC, for the statutory “owner” to remove the violation. However, that application of the HMC is not the end of the inquiry. The tenant has, without doubt, an affirmative leasehold, contractual obligation under the proprietary lease to remove many of the violations at issue. The court concludes that the tenant has breached her obligation under the lease to the extent that she has not removed the violations which are repairs she is responsible for making. Accordingly, while the court will direct the owner, in the first instance, to remove the violations, the owner is free to pursue its remedy against the tenant for her noncompliance with her substantial obligations under the lease. The available remedies would appear to run to a simple charge to the tenant for the costs of the repairs, an action to recover the costs (see, Susskind v 1136 Tenants Corp., 43 Misc 2d, at p 595) or a proceeding to terminate the lease for the violation. Further developments of the case law will be required to determine the most effective way to obtain compliance by the tenant.
This holding does not violate the general rule that the tenant is entitled to the benefits of the warranty of habitability, Real Property Law § 235-b. The tenant is entitled to a living accommodation that is free from those conditions which breach the warranty. (See, e.g., Delulio v 320-57 Corp., NYLJ, Feb. 2, 1983, p 12, col 1 [Sup Ct, NY County], mod 99 AD2d 253 [1st Dept 1984] [the court awarded substantial damages for the landlord cooperative corporation’s failure to do required repairs]; Hauptman v 220 E. 80th St. Corp., supra.) While the warranty applies to cooperatives, its precise application may be different than in “normal” rental buildings because of the unusual relationship between the parties. (See, Department of Hous. Preservation & Dev. v Sartor, 109 AD2d *344 665, 667 [1st Dept 1985] [the measure of damages may be different in buildings with an administrator appointed under RPAPL art 7-A than in other buildings]; Geffner v Phillips, 123 Misc 2d 127, 130 [Civ Ct, NY County 1984]; Lawrence v Martin, 131 Misc 2d 256 [Civ Ct, NY County 1986].)
The Legislature has a goal to foster cooperative housing; this is not in conflict with the appellate decisions to include all leases under Real Property Law § 235-b. Cooperative tenants whose leaseholds are for extended terms and whose monthly charges are based on the actual or projected costs of maintaining the building should be held to their obligations under the lease, just as the owning corporation is held to its obligations. Placing the burden to remove the violations on the owner where the tenant either refuses or insists on enforcing his or her rights is a means of enforcing the housing standards set forth in the HMC. Placing the ultimate burden of repair expenses on the party who has freely agreed to bear them is not an injustice and does not impinge on the rights of a tenant to decent housing. It is common knowledge in New York that cooperative apartments are not necessarily inexpensive. Indeed, petitioner paid over $100,000 for her apartment. It cannot be said that the lease at issue is an adhesion contract from which the tenant needs protection.
The situation of a cooperative must be contrasted with a "normal” rental. The public policy of encouraging cooperative, owner-occupied housing is not involved. The bargaining position of the parties is different. The crisis condition of a housing shortage is substantially different. The extremely long lease term differs from the one- or two-year stabilized lease. The investment in purchasing an apartment and in doing substantial renovations is different from a "normal” lease which does not allow any alterations to the demised apartment.
This decision should not be interpreted to allow an ordinary rental to adopt a lease clause similar to the one at issue here to place the burden on the tenant to do all repairs in the apartment. In Altz v Leiberson (233 NY 16, 17 [1922]) Judge Cardozo noted that the common-law rule that an owner had no duty to repair the demised rooms has been abandoned. In the field of cooperative housing the result that the tenant must comply with the lease is not unreasonable; in rentals, the State, through its emergency housing regulations, may well have an interest in preventing the enforcement of such clauses. The differences between cooperative and noncoopera *345 tive housing are vast and the holding here is not a step toward an amalgamation.
An analysis of the particular lease provisions in this case provide an answer as to who bears the responsibility for the removal of each of the violations involved. Paragraph (2) of the lease provides: "The Lessor shall at its expense keep in good repair all of the building including all of the apartments
* * * except those portions the maintenance and repair of which are expressly stated to be the responsibility of the Lessee pursuant to Paragraph 18 hereof.” Paragraph (18) provides, in pertinent part: "The Lessee shall keep the interior of the apartment (including interior walls, floors and ceilings * * *) in good repair, shall do all of the painting and decorating required for his apartment * * * and shall be solely responsible for the maintenance, repair and replacement of plumbing, gas and heating fixtures and equipment
* * * The Lessee shall be solely responsible for the maintenance, repair and replacement of all lighting and electrical fixtures, appliances and equipment * * * from the junction box at the riser into and through the Lessee’s apartment.”
A straightforward reading of these two clauses leads to the conclusion that petitioner is responsible for six of the violations at issue — painting, obstructed sink, plastering a wall, defective wall fixture, defective outlet, and leaking faucet. The remaining two violations, dampness penetrating the wall and stagnant water on the roof extension, are clearly the owner’s ultimate responsibility, for which petitioner bears no financial liability.
The default judgment will be vacated since it is clear that Steppingstone, although not entitled to dismissal, has a defense going to the merits. It is, of course, of no moment that petitioner could, as a rental tenant, have commenced this proceeding prior to the closing of the cooperative plan. The reality is that she "sat on her rights” until she obtained the benefit of the "insider” price and became a shareholder-proprietary lessee; the rights of the parties are as they currently exist not as they existed in the past.