OPINION OF THE COURT
Joseph G. Golia, J.
This is a landlord-tenant holdover proceeding in which the *923 respondent has allegedly violated his proprietary lease agreement in this Federally insured cooperative by residing therein with a nonfamily individual.
Respondent moved to dismiss this action and petitioner moved for summary judgment.
The essential facts, not in dispute, are as follows:
The respondent Joshua J. Slovik has resided at 99-10 60th Avenue, Rego Park, New York, apartment 4H since 1982. The instant premises, known as Sherwood Village Cooperative, is a Federally insured cooperative.
Article 5 of the proprietary lease states that "a member shall occupy the dwelling unit by this agreement as a private dwelling with his immediate family”. The respondent is residing with Lee Shapiro who is not related to Mr. Slovik. Based upon this cohabitation Sherwood Village Cooperative terminated Mr. Slovik’s tenancy and commenced this holdover proceeding.
Respondent alleges that section 235-f (unlawful restrictions on occupancy) of the Real Property Law permits him to have a roommate. Petitioner alleges that Real Property Law § 235-f is not applicable to cooperatives in general and that in any event application of section 235-f to a Federally insured building would be an impermissible infringement on Federal law.
In order to determine whether a resident of a cooperative apartment can benefit from section 235-f, we must examine that section in detail.
Real Property Law § 235-f (3) states that: "Any lease or rental agreement for residential premises entered into by one tenant shall be construed to permit occupancy by the tenant, immediate family of the tenant, one additional occupant, and dependent children of the occupant provided that the tenant or the tenant’s spouse occupies the premises as his primary residence.” (Emphasis added.) However, subdivision (1) (a) of section 235-f defines a "Tenant” as "a person occupying or entitled to occupy a residential rental premises who is either a party to the lease or rental agreement for such premises or is a statutory tenant pursuant to the emergency housing rent control law or the city rent and rehabilitation law or article seven-c of the multiple dwelling law.” (Emphasis added.) The statute, on its face, does not appear to apply to owners of cooperative apartments.
It should, however, be noted that section 235-f was enacted as part of the Omnibus Housing Act (OHA) of 1983. The *924 purpose of this section was to protect all residential tenants from evictions as a result of their life-styles. Such intent was clearly enunciated by the Legislature when they stated that: "The legislature further finds and declares that recent judicial decisions refusing to extend the protection of human rights law to unrelated persons sharing a dwelling will exacerbate this serious problem; that unless corrective action is taken by the legislature, thousands of households throughout this state composed of unrelated persons who live together for reasons of economy, safety and companionship may be placed in jeopardy. The legislature therefore declares that in order to prevent uncertainty, potential hardship and dislocation of tenants living in housing accommodations subject to government regulations as to rentals and continued occupancy as well as those not subject to such regulation, the provisions of this act are necessary to protect the public health, safety and general welfare” (L 1983, ch 403, § 1; emphasis added). Thus the Legislature established that unrelated individuals in a rental situation need protection and that lease covenants restricting occupancy solely to "immediate family members” will not be upheld.
Significantly, this legislation was specifically intended to redress the many judicial decisions refusing "to extend the protection of the human rights law to unrelated persons sharing a dwelling”. This being the stated purpose of the Legislature, it cannot be seriously argued that the owner of a cooperative has less "human rights” protection than a tenant who has no financial interest in the leased premises. Clearly the Legislature intended that all tenants be protected by section 235-f.
Given this clear intention, I am nevertheless aware that the status of an owner of a cooperative as a "tenant” is, at best, a hybrid.
Even though the applicability of section 235-f to cooperatives has not been decided directly,* there is an increasing number of cases addressing the landlord-tenant relationship inherent in cooperative ownership which conferred tenant rights upon such owners.
The Appellate Term, Second Department, in overruling a dismissal of a summary nonpayment proceeding, stated in Jimerson Hous. Co. v Butler (102 Misc 2d 423, 424) that: "[T]he *925 relationship between the petitioner, a co-operative, and respondent, its stockholder, is that of landlord and tenant to the extent that petitioner may maintain a summary proceeding against respondent”.
The Appellate Term, First Department, thereafter found in Suarez v Rivercross Tenants’ Corp. (107 Misc 2d 135, 139) that: "[A]s a matter of sound policy the proprietary tenant, subject as he is to being ousted for nonpayment of charges * * * [in a summary proceeding] should enjoy whatever benefits flow from the warranty of habitability”. The court thereby found that Real Property Law § 235-b (warranty of habitability) may form the basis of a plenary action for damages by a cooperative owner against the cooperative corporation.
In Brisbone House v Sims (122 Misc 2d 46) the Civil Court found that RPAPL 711 was applicable in a holdover proceeding where the cooperative board chose to terminate the tenancy of allegedly undesirable cooperative owners. The court found, however, that these owners were entitled to trial to assess the nuisance charge. The court discounted the board’s assertion that these individuals could be removed simply by the voting power of the shareholders.
In view of the above-cited cases I find that public policy dictates that all tenants be protected from being evicted as a result of their economic or personal need to share their living quarters.
In the absence of a specific exclusion for cooperatives in section 235-f, I further find that this benefit is extended to cooperative owners especially in light of the growing trend to include cooperative owners under the rubric of the landlord-tenant law.
In light of the above, the issue of whether or not Real Property Law § 235-f creates an impermissible infringement upon Federal regulations in Federally insured cooperatives can now be addressed.
In Carlyle Towers Coop. "B” v Pescador (NYLJ, Feb. 26, 1986, at 14, col 5) the respondent tenant sought and obtained approval from the cooperative board to reside with his fiancée. Instead of respondent’s fiancée, an unknown male moved in with him.
When the cooperative board discovered the change, they informed the respondent that the unauthorized male occupant must vacate the premises. Respondent whereupon advised the board that he was changing the occupancy of his apartment to exclude his fiancée and to include the male occupant. Follow *926 ing a meeting of petitioner’s board of directors, respondent’s request was turned down.
The distinction between Carlyle Towers (supra) and the instant case, is the respondent’s tenancy in Carlyle was terminated after he requested permission to include his roommate as an occupant. Whereas the respondent’s tenancy herein was terminated without giving him the opportunity to present his roommate to the cooperative board in order to assess the male occupant’s desirability or lack of same.
This court does not reach the question of whether the board may, because of Federal regulations, disapprove of the additional occupant’s presence, absent an interview and a finding that said occupant was unfit. (See, Marine Terrace Assocs. v Zeimbekis, 122 Misc 2d 921.)
Similarly this court cannot address the petitioner’s claim that the respondent illegally sublet the subject premises upon the assumption that such claim was merely surplusage and an alternative pleading in view of both parties not addressing that issue in their papers.
Accordingly, the petition is dismissed with leave to restore on motion by the petitioner setting forth its good-faith desire to proceed on the grounds of an unauthorized sublet.

 See, Carlyle Towers Coop. "B” v Pescador, NYLJ, Feb. 26, 1986, at 14, col 5; Mainstay Coop. Section Two v Hroch, 105 AD2d 695.