OPINION OF THE COURT
Emanuel Haber, J.
This is a summary holdover proceeding wherein petitioner, *824 a Federally insured cooperative, seeks a final judgment of possession against respondent, a proprietary lessee, on the ground that respondent violated the terms of his occupancy agreement by residing in his apartment with an individual who is not a member of his immediate family.
Petitioner, Southridge Cooperative, is the owner of the premises known as 33-44 91st Street, Jackson Heights, New York, the construction of which was partially financed by an FHA-insured mortgage pursuant to title II, § 213 of the National Housing Act (12 USC § 1715e), and the regulations contained in 24 CFR part 213. On January 12, 1987, respondent, Joseph Menendez, became a tenant-stockholder of petitioner and took possession of apartment 4V by entering into an occupancy agreement with petitioner. Article 5 of the occupancy agreement states, in pertinent part, "The Member shall occupy the dwelling unit covered by this agreement as a private dwelling for himself and his immediate family”.
Respondent indicated on his original application form dated October 4, 1986 that he would be the sole occupant of the apartment. However, since the date he entered into occupancy, or shortly thereafter, respondent has been living in the apartment with a Maria Rodriguez and her nine-year-old son. Respondent claims that the child has moved out, but does not dispute that Maria Rodriguez, whom he identifies as his fiancée, is occupying the apartment with him.
On the basis of Maria Rodriguez’ occupancy of the apartment with the respondent, and in reliance upon article 5 of the occupancy agreement, petitioner terminated respondent’s tenancy and commenced the instant holdover proceeding.
Respondent contends that the relevant portion of article 5 of the occupancy agreement limiting occupancy to the shareholder and his immediate family constitutes an unlawful restriction on occupancy under section 235-f of the Real Property Law and is, therefore, unenforceable. Petitioner argues that section 235-f does not apply to cooperatives, and that even if it did, its application to strike a clause in an occupancy agreement of a Federally insured cooperative would be an impermissible infringement on Federal law.
Real Property Law § 235-f states in pertinent part:
"2. It shall be unlawful for a landlord to restrict occupancy of residential premises, by express lease terms or otherwise, to a tenant or tenants or to such tenants and immediate family. Any such restriction in a lease or rental agreement entered *825 into or renewed before or after the effective date of this section shall be unenforceable as against public policy.
"3. Any lease or rental agreement for residential premises entered into by one tenant shall be construed to permit occupancy by the tenant, immediate family of the tenant, one additional occupant, and dependent children of the occupant provided that the tenant or the tenant’s spouse occupies the premises as his primary residence. * * *
”7. Any provision of a lease or rental agreement purporting to waive a provision of this section is null and void.”
Petitioner also emphasizes subdivision (1) (a) in support of its contention that section 235-f does not apply to cooperatives:
"1. As used in this section, the terms:
"(a) 'Tenant’ means a person occupying or entitled to occupy a residential rental premises who is either a party to the lease or rental agreement for such premises or is a statutory tenant pursuant to the emergency housing rent control law or the city rent and rehabilitation law or article seven-c of the multiple dwelling law.” (Emphasis added.)
In deciding whether section 235-f applies to cooperatives, the court must determine whether a so-called proprietary lease or occupancy agreement entered into by a stockholder of a cooperative corporation is in fact a lease entered into by a tenant for the rental of residential premises.
That the subject apartment constitutes a residential premises is obvious and uncontroverted, as even article 5 itself of the occupancy agreement admits: "premises to be used for residential purposes only.” As to the leasehold nature of the premises, the courts have long viewed the relationship between a cooperative corporation and a proprietary lessee as that of landlord and tenant. (Dunbar Apts. v Nelson, 136 Misc 561 [Mun Ct, NY County 1930]; Silverman v Alcoa Plaza Assocs., 37 AD2d 166 [1st Dept 1971]; Hauptman v 222 E. 80th St. Corp., 100 Misc 2d 153 [Civ Ct, NY County 1979]; Jimerson Hous. Co. v Butler, 102 Misc 2d 423 [App Term, 2d Dept 1979]; Suarez v Rivercross Tenants’ Corp., 107 Misc 2d 135 [App Term, 1st Dept 1981]; McMunn v Steppingstone Mgt. Corp., 131 Misc 2d 340 [Civ Ct, NY County 1986].) Although the relationship is sui generis, the nature of the stockholder being hybrid, as the term "proprietary lessee” (or even the very term used by petitioner, "tenant-stockholder”) itself implies, the proprietary lessee is nevertheless still fully a tenant. "It thus appears that a proprietary lease is no different from any *826 other type of lease” (Silverman v Alcoa Plaza Assocs., supra, at 172), “and it creates a landlord-tenant relationship between the stockholder and the co-operative corporation” (Suarez v Rivercross Tenants’ Corp., supra, at 137). The monthly payments made by the tenant-stockholder, however artfully expressed as “monthly carrying charges” or “maintenance,” are in reality rent in every sense of the word, the nonpayment of which subjects the tenant-stockholder to eviction by way of a summary proceeding in the Housing Part of the Civil Court for nonpayment of rent. “While the payments required to be made under the subscription agreement are not expressly denominated as 'rent’ the implication of the various provisions is unmistakable that such payments were regarded by the parties as rent in the sense that without such payments possession of the leased premises could not be retained” (Dunbar Apts. v Nelson, supra, at 564).
Thus it has been abundantly recognized in law that an occupancy agreement or proprietary lease entered into by a stockholder of a cooperative corporation is in fact a lease by a tenant for residential rental premises.
Is this understanding, however, embodied in the Real Property Law? Is a lease entered into by a tenant for residential rental premises inclusive of a proprietary lease within the meaning of Real Property Law § 235-f? What does “lease” and "residential rental premises” mean under section 235-f? To glean the intent of the Legislature, one must examine the language of the entire Real Property Law.
Similar terminology, for example, appears in Real Property Law § 235-b, which establishes an implied warranty of habitability "[i]n every written or oral lease or rental agreement for residential premises” (emphasis added) between the “landlord or lessor” and a “lessee or tenant”. It has been held that this language includes proprietary leases between a cooperative corporation and a shareholder. The court in Hauptman v 222 E. 80th St. Corp. (supra, 100 Misc 2d, at 155) observed, "There is nothing here which indicates an intention by the Legislature to exempt co-operatives from the ambit of the warranty.” Suarez v Rivercross Tenants’ Corp. (supra, 107 Misc 2d, at 139) states, “A proprietary lessee is entitled to the statutory protection as well as the noninvesting, ordinary tenant.” And Mc-Munn v Steppingstone Mgt. Corp. (supra, 131 Misc 2d, at 342) flatly declares, “There is no doubt that the warranty applies to cooperative apartments.”
*827 Just as the courts have concluded that the language, "lease or rental agreement for residential premises” is not intended by the Legislature to except proprietary leases from Real Property Law § 235-b, there is likewise nothing to indicate that the Legislature is not similarly minded with respect to Real Property Law § 235-f, especially since both sections establish provisions which the Legislature deems to be mandated by public policy.
Indeed, this court finds nothing in the Real Property Law indicating that a term such as "residential rental premises” by definition does not include proprietary leases. On the contrary, every indication is that the Legislature intends such language to encompass both proprietary leases and the more conventional types of leases, and that where the Legislature’s intention is to exclude proprietary leases — or any other type of residential tenancy — from a particular section, it carves out an exception which is specifically stated. Such is the case with Real Property. Law § 226-b. Subdivision (2) (a) of section 226-b states: "A tenant renting a residence pursuant to an existing lease in a dwelling having four or more residential units shall have the right to sublease his premises subject to the written consent of the landlord in advance of the subletting. Such consent shall not be unreasonably withheld” (emphasis added).
Subdivision (3) of section 226-b, however, states: "The provisions of this section shall apply to leases entered into or renewed before or after the effective date of this section, however they shall not apply to public housing and other units for which there are constitutional or statutory criteria covering admission thereto nor to a proprietary lease, viz.: a lease to, or held by, a tenant entitled thereto by reason of ownership of stock in a corporate owner of premises which operates the same on a cooperative basis.”
Here, the Legislature specifically carves out an exception with regard to (1) public housing and other units for which constitutional or statutory admission requirements exist, and (2) proprietary leases. Obviously, the phrase "a tenant renting a residence” on its face includes these two categories of tenancies or the Legislature would not have felt the need to exclude them specifically.
Similarly, there is nothing to indicate that the phrases "residential rental premises”, "lease or rental agreement for residential premises”, and "tenant” in Real Property Law § 235-f are not meant by the Legislature to apply on their face *828 to the cooperative situation. Unlike Real Property Law § 226-b, there is no exclusionary language in section 235-f, and there is no reason to suppose that the Legislature would find a restrictive occupancy clause in a proprietary lease less offensive to public policy than a similar clause in a nonproprietary lease.
Indeed it has been held that section 235-f extends to cooperatives. (Sherwood Vil. Coop. A v Slovik, 134 Misc 2d 922 [Civ Ct, Queens County 1986]; 1250 Ocean Parkway Owner Corp. v Tasuha, NYLJ, May 25, 1988, at 28, col 3 [Civ Ct, Kings County]; but see, Carlyle Towers Coop. "B" v Pescador, NYLJ, Feb. 26, 1986, at 14, col 5 [Sup Ct, Queens County].) The court in Slovik (supra, at 925) found:
"[P]ublic policy dictates that all tenants be protected * * *.
"In the absence of a specific exclusion for cooperatives in section 235-f, I further find that this benefit is extended to cooperative owners especially in light of the growing tend to include cooperative owners under the rubric of the landlord-tenant law.”
This court, however, goes beyond the holding in Slovik (supra) and finds that section 235-f applies on its face to proprietary leases of residential cooperative apartments. Petitioner’s emphasis on subdivision (1) of section 235-f is misplaced. Subdivision (1) merely distinguishes between the terms "tenant” and "occupant” as those terms are used in the section, and is not meant to distinguish between proprietary and nonproprietary lessees on the basis of the word "rental.”
Having found that section 235-f applies to a proprietary lease of a residential cooperative apartment, this court must now turn to the second issue, namely, whether application of section 235-f to a Federally insured cooperative would be an impermissible infringement on Federal law.
In this regard, petitioner cites subdivision (8) of section 235-f, which states, "Nothing in this section shall be construed as invalidating or impairing the operation of, or the right of a landlord to restrict occupancy in order to comply with federal, state or local laws, regulations, ordinances or codes.”
Quite simply, there is no statute of Federal law restricting occupancy to the tenant or to the tenant and his immediate family in a cooperative that has mortgage insurance under section 213 of the National Housing Act. True, the occupancy agreements must be in a form approved by the Federal Housing Commissioner, but such approval does not of itself *829 mean that every clause in such an occupancy agreement is elevated to the status of binding Federal law. Mere permissive approval of a lease clause by the Commissioner does not amount to the promulgation of a regulation or statute of Federal law intended to preempt conflicting State and local laws. For cooperatives such as the petitioner, the Department of Housing and Urban Development accepts but does not require the restrictive occupancy provision expressed in article 5 of the occupancy agreement. The enforceability of such a clause is, therefore, governed by State law.
The result might be different for subsidized projects such as Section 8-assisted housing and public housing, since there are statutory provisions limiting occupancy to low- and moderate-income persons. But cooperative housing mortgage insurance pursuant to section 213 of the National Housing Act has nothing to do with low- and moderate-income tenants, and there are no statutory restrictions on occupancy which might mandate a provision such as the one in article 5 of the occupancy agreement.
Thus there is no collision between Federal and State law in this case, and no impediment exists to the application of section 235-f to strike that portion of article 5 of the occupancy agreement restricting occupancy to the tenant or to the tenant and his immediate family.
This court holds that the clause in article 5 of the occupancy agreement restricting occupancy to the "Member * * * himself and his immediate family” is void and unenforceable as being against public policy, pursuant to Real Property Law § 235-f. Accordingly, this proceeding is dismissed.