OPINION OF THE COURT
Gerald Lebovits, J.
*932 Petitioner cooperative corporation commenced this holdover proceeding on the ground that its board of directors terminated respondent Morgan Kennedy’s right to occupy the premises. The board voted to terminate respondent’s proprietary lease after finding that respondent engaged in objectionable conduct. Former respondents David Holland and David Rubin are no longer parties to this case; Kennedy is the only remaining respondent. Respondent, moving for summary judgment, argues that petitioner acted outside the scope of its authority by not unfailingly following the procedure prescribed by the cooperative bylaws in voting to terminate respondent’s tenancy. Respondent also argues that petitioner acted in bad faith by denying his right to be heard before the vote.
Petitioner cross-moves for summary judgment and for use and occupancy. Petitioner contends it acted within its authority and in good faith and that the court should defer to its board vote and evict respondent. In the alternative, petitioner maintains that if it acted outside its authority or in bad faith, respondent should still be evicted based on competent evidence that his conduct was objectionable.
Petitioner’s motion for use and occupancy is granted. Petitioner’s motion to dismiss respondent’s affirmative defenses is granted in part and denied in part. Petitioner’s motion for summary judgment is denied. Respondent’s first, second, and third affirmative defenses are withdrawn or denied. Respondent is granted partial summary judgment on his fourth through eighth affirmative defenses. But unresolved questions of fact remain regarding how much objectionable conduct the court can attribute to respondent and whether the conduct was objectionable. Only a trial can resolve these questions of fact.
I. Background
Respondent purchased the shares appurtenant to apartment LC on November 20, 1986, and entered into a proprietary lease with petitioner. In January 2003, respondent sublet the apartment to David Holland. Bad blood soon developed between subtenant Holland and the building’s shareholder-tenants. Holland renovated the apartment and removed portions of the walls and ceiling without the board’s consent and without securing proper permits from the New York City Department of Buildings. On March 5, 2003, petitioner sent a letter to respondent notifying him that Holland was making unapproved renovations and reminding him that renovations require board approval. (See petitioner’s motion to dismiss affirmative defenses and for *933 summary judgment, exhibit E.) Respondent never responded to the March 5 letter.
On April 15, 2003, petitioner sent respondent a second letter, informing him that Holland’s renovations caused a small fire in the wall of the apartment, that neighbors were complaining about noise from the apartment, that someone removed appliances without board approval, and that three individuals lived in the apartment without board approval. (See petitioner’s motion to dismiss affirmative defenses and for summary judgment, exhibit F.) In its April 15 letter, the board requested that respondent evict Holland and engage a licensed professional to “assess the construction and electrical work.” Respondent did not respond to that letter.
On May 14, 2003, the cooperative board held a meeting with respondent to discuss the problems surrounding the apartment. The minutes from the meeting reflect that respondent told the board that he was entirely unaware of the complications that Holland’s renovations had caused. Members of the board urged respondent to begin eviction proceedings against Holland. After some conversation, respondent agreed to talk to Holland and respond to the management office within 10 days. (See petitioner’s motion to dismiss affirmative defenses and for summary judgment, exhibit G.)
Respondent did not respond to the management office. Instead, and without petitioner’s consent or approval, he entered into a new sublease with Holland for a term commencing August 1, 2003 and expiring on January 31, 2005. (See petitioner’s motion to dismiss affirmative defenses and for summary judgment, exhibit H.)
On September 12, 2003, the New York City Police Department executed a search warrant at the subject premises and arrested Holland for allegedly possessing class A-I felony weight of narcotics inside respondent’s apartment. Holland was released and indicted. The case awaits trial in Supreme Court, Criminal Term, New York County, under indictment No. 6635/ 03. On September 19, 2003, petitioner wrote to respondent about Holland’s arrest and requested that respondent begin immediate eviction proceedings against Holland. The September 19 letter stated that “[i]f anything further should happen [petitioner] will hold [respondent] personally responsible for [respondent] is the owner of the apartment.” (Petitioner’s motion to dismiss affirmative defenses and for summary judgment, exhibit J.) Respondent did not respond to that letter.
*934 On October 23, 2003, petitioner sent respondent a letter stating that Holland’s renovations had resulted in a severed electric cable that cut off the building’s heat. Petitioner alleged that by allowing Holland to conduct the renovations, respondent was in default of the cooperative’s house rules. (See petitioner’s motion to dismiss affirmative defenses and for summary judgment, exhibit K.)
On November 22, 2003, the police executed a second warrant at the subject premises and again arrested Holland, this time for allegedly possessing class A-II felony weight of narcotics inside respondent's apartment. That case, too, is pending in Supreme Court, Criminal Term, New York County, under indictment No. 6635a/03.
During the arrest, the police damaged the locks on the building’s front door, and petitioner had the locks on the building’s front door changed. On November 26, 2003, petitioner sent a letter to respondent informing him of the arrest and telling respondent where he could acquire new keys. (See petitioner’s motion to dismiss affirmative defenses and for summary judgment, exhibit L.) Respondent did not give a copy of the keys to Holland, who was unable to enter the building.
Because they were denied access to the building, Holland and his roommate, David Rubin, brought an illegal-lockout proceeding against both respondent and petitioner to repossess the apartment. In an affidavit, respondent claimed that he was not involved in their lockout. Respondent averred that petitioner and the building’s superintendent locked Holland out. (See petitioner’s motion to dismiss affirmative defenses and for summary judgment, exhibit M.)
On January 30, 2004, the Honorable Laurie L. Lau ordered respondent to restore Holland and Rubin to possession. (See Holland v Kennedy, Index No. L&T 53120/2004.) On February 18, 2004, respondent commenced a holdover proceeding against Holland and Rubin. Respondent regained possession on April 1, 2004. (See respondent’s notice of cross motion, exhibit 1.)
Before respondent regained possession of the subject premises from Holland and Rubin, petitioner’s board of directors called for a meeting to discuss what it termed respondent’s objectionable conduct. The board announced the meeting to the shareholders by a notice on the letterhead of an entity named “East 15th Street Owners Corp.” The notice was signed by “[t]he management of 133 East 15th Street Owners Corp.” (See respondent’s notice of cross motion, exhibit 2.) Petitioner’s cor *935 rect name is 13315 Owners Corp. The board meeting took place on February 10, 2004.
Respondent and his attorney attended the February 10 meeting. According to respondent, three board members, some shareholders, an employee of the management company, and petitioner’s attorney were at the meeting — along with respondent and his attorney. (See respondent’s affidavit in support of cross motion 1i 13.) Respondent has since argued, and petitioner does not dispute, that shareholders did not duly elect the board members present at the meeting of February 10.
At the February 10 meeting, board members silenced respondent’s attorney. Petitioner claims, but in a conclusory way, that respondent became disruptive shortly after his attorney began his presentation to the board. As a result of respondent’s supposed disruptions, the board cut short the presentation and called for a vote. (See petitioner’s reply affirmation 11 31.) Respondent claims that board members rejected his attorney’s request to discuss respondent’s allegedly objectionable conduct. Shortly after respondent’s attorney finally began speaking, someone at the meeting told him to “shut-up.” Neither respondent nor his attorney spoke further. (See respondent’s affidavit in support of cross motion 1114.)
At the conclusion of the meeting, the board, but not the shareholders, voted to terminate respondent’s proprietary lease due to his alleged objectionable conduct and that of his subtenant, Holland. The board objected to respondent’s failure to respond to its letters, to his decision not to evict Holland timely, and to his entering into a second sublease with Holland without the board’s approval after it had already asked respondent, at their May 14 meeting, to evict Holland. The board also objected to respondent’s allegedly dumping garbage on the street in front of the building. That alleged dumping resulted in the New York City Environmental Control Board’s issuing tickets to the building. (See petitioner’s verified holdover petition, exhibit A.)
On February 11, respondent received a termination notice from the board informing him that, under paragraph 31 (f) of the proprietary lease, his lease and the right to occupy the premises were terminated effective February 20, 2004. Paragraph 31 (f) of the lease, which addresses a shareholder-tenant’s objectionable conduct, provides that at any time an affirmative vote of two thirds of the board of directors can establish a shareholder-tenant’s conduct as objectionable. (See petitioner’s notice of motion, exhibit C.) Respondent refused to vacate, and petitioner commenced this holdover proceeding.
*936 Petitioner moves to dismiss respondent’s affirmative defenses and for summary judgment. Petitioner argues that the business judgment rule shields the board’s decision to terminate respondent’s proprietary lease and that it is entitled to a judgment of possession in its favor. Alternatively, petitioner argues that if the court declines to apply the business judgment rule to the board’s decision, the court should award petitioner summary judgment based on the alleged objectionable conduct. This case hinges on the application of 40 W. 67th St. v Pullman (100 NY2d 147, 152 [2003]).
II. The Pullman Decision
In Pullman, plaintiff cooperative owned a building containing 38 apartments. Pullman bought into the cooperative and acquired the proprietary lease for his apartment. (Id. at 150.) Soon after moving in, Pullman began complaining about his upstairs neighbors and distributed flyers — some referring to his neighbor as a potential “psychopath,” others describing the neighbor’s wife and the board president’s wife as having “intimate personal relations” with each other. (Id. at 151.) Pullman repeatedly called the police, began various lawsuits against other neighbors and board members, and illegally altered his apartment. (Id. at 150-151.) In response to this behavior, the cooperative called a meeting under article III (First) (f) of their lease agreement. (Id. at 151.) The board sent timely notice of the meeting to all shareholders, including Pullman. (Id. at 152.) Pullman did not attend the shareholder meeting, but owners of more than 75% of the outstanding shares of the cooperative — a supermajority — were present. By a unanimous vote, they passed a resolution declaring Pullman’s conduct “objectionable” and directing the board to terminate his proprietary lease and cancel his shares. (Id.) Pullman remained in the apartment, and the cooperative brought an action in Supreme Court for possession and ejectment and a declaratory judgment to cancel his shares.
Supreme Court denied the cooperative’s summary judgment motion and dismissed the first claim of the complaint, which sought ejection and possession solely on the shareholder’s vote and termination notice. (See 100 NY2d at 152.) The court relied on RPAPL 711 (1), which provides that a proceeding to recover possession under a lease provision entitling landlord to terminate for objectionable conduct “shall not be maintainable unless the landlord shall by competent evidence establish to the satisfaction of the court that the tenant is objectionable.” (Id.) Supreme Court determined that the cooperative had not pre *937 sented competent evidence to the court of Pullman’s objectionable conduct.
Supreme Court’s decision followed precedent long extant, for at that point “it was well understood that only a court of competent jurisdiction could make a determination that a tenant might be removed from her home by reason of a claim of objectionable conduct.” (Steven W. Smollens, Advanced Issues in Coop & Condo Law Practice, at 23 [NYCLA CLE unpublished manuscript 2004], citing Sherwood Vil. Coop. A v Slovik, 134 Misc 2d 922, 925 [Civ Ct, Queens County 1986]; Brisbane House v Sims, 122 Misc 2d 46, 46 [Civ Ct, NY County 1983].)
The Appellate Division disagreed with Supreme Court and, with two Justices dissenting, granted the cooperative summary judgment based on the Court of Appeals decision in Matter of Levandusky v One Fifth Ave. Apt. Corp. (75 NY2d 530 [1990]). (See 40 W. 67th St. v Pullman, 296 AD2d 120, 124 [1st Dept 2002].) The First Department in Pullman held that the business judgment rule is the proper standard of judicial review to evaluate decisions made by residential cooperative corporations. (See id.) The business judgment rule is a common-law doctrine by which the courts exercise restraint and defer to good-faith decisions made by boards of directors in business settings. The business judgment rule has applied to cooperative board determinations for some time: “[E]ven before Levandusky, Courts had recognized that Cooperative Boards were decision-making bodies and their decisions were reviewable under the business judgment rule.” (Smollens, supra at 25 [citing cases].) But although business judgment issues would occasionally arise in holdover proceedings involving cooperatives (see e.g. Sirianni v Rafaloff, 284 AD2d 447, 448 [2d Dept 2001]), no court before Pullman had applied the business judgment rule in the context of a proprietary lease termination to evict a shareholder.
The Court of Appeals in Pullman affirmed the Appellate Division’s summary judgment award to the cooperative corporation, explaining that a court can apply the business judgment rule consistently with RPAPL 711. According to the Court of Appeals, the shareholders’ vote and stated findings are proof of the “competent evidence” that RPAPL 711 (1) requires. (See Pullman, 100 NY2d at 155.) The Court of Appeals envisioned that a court would review under the business judgment rule the competent evidence that is the basis for the shareholder vote. (Id.) This is because “[t]he (Pullman) court concluded that in the realm of co-op governance the vote of the shareholders [is] *938 the functional equivalent of competent evidence that would establish to the satisfaction of the court that the tenant [is] objectionable.” (Vincent Di Lorenzo, New York Condominium and Cooperative Law § 11:8, 2003 Pocket Part, at 139 [2d ed].)
Under Pullman, therefore, courts should defer to a board’s vote as competent evidence that the shareholder-tenant’s conduct is objectionable under RPAPL 711 unless the shareholder-tenant makes a showing of one of the following: “[T]hat the board acted (1) outside the scope of its authority, (2) in a way that did not legitimately further the corporate purpose or (3) in bad faith.” (Pullman, 100 NY2d at 155.) When a shareholder-tenant successfully raises one of these defenses, the court can no longer assume that the shareholders and board members properly examined the competent evidence, and the court determines from its own evaluation of the competent evidence whether the cooperative is entitled to possession. (Warren A. Estis and William J. Robbins, Landlord-Tenant, Flying the Co-op, Business Judgment Rule Governs in Ending Tenancy, NYLJ, June 4, 2003, at 5, col 2.)
A Pullman analysis has two phases. Phase one determines whether to apply the business judgment rule to a shareholder or board vote. It is the shareholder-tenant’s burden to persuade the court why it should not apply the business judgment rule and defer to the vote. If the court does not apply the business judgment rule, in phase two the court determines from its own evaluation of the competent evidence whether the cooperative is entitled to possession. In phase two, the cooperative has the burden to prove to the court that it is entitled to possession.
Pullman could not successfully rely on any of the three Pullman defenses — that the board acted (1) outside its authority, (2) not legitimately furthering its corporate purpose, or (3) in bad faith. The Court of Appeals noted that the cooperative had acted within its authority because it “unfailingly followed the procedures contained in the [proprietary] lease when acting to terminate defendant’s tenancy.” (Pullman, 100 NY2d at 156.) The Court concluded that the board furthered the corporate purpose because the unanimous vote of everyone present at the shareholders’ meeting expressed the cooperative’s collective will. (Id.) And because Pullman did not show that the cooperative engaged in any bad faith, arbitrariness, favoritism, discrimination, or malice, the Court assumed that the cooperative corporation acted in good faith. (Id. at 157.)
Having deferred to the shareholders’ competent evidence, the Court did not evaluate whether the shareholder-tenant’s *939 conduct was objectionable. Had the respondent in Pullman successfully raised one of the three defenses, the Court would have needed to evaluate on its own whether the shareholder-tenant’s conduct was objectionable.
III. Pullman’s Applicability to This Proceeding: Board vs. Shareholder Votes
It is unclear whether Pullman applies to this proceeding, which involves a board of directors’ vote rather than a shareholders’ vote.* (See Cooperatives: Business Judgment Rule Permits Shareholder Removal, 33 Real Est L Rep 3, 3 [July 2003] [noting that Pullman left open whether board of directors’ vote to terminate tenancy, as distinguished from shareholders’ vote, can be reviewed under business judgment rule]; Hot Topics Affecting Cooperatives & Condominiums 2004, at 10 [unpublished ABCNY CLE handout 2004] [mem from Jason LoMonaco and Howard Schechter; noting that although many cooperatives’ proprietary leases “contain( ) an objectionable conduct provision authorizing the coop to determine objectionable conduct on the part of a shareholder by vote of the Board of Directors only(, it) is not entirely clear that Pullman protects such a determination from court scrutiny”].) The Court of Appeals’ language in Pullman implies that Pullman applies to this proceeding, but the Court’s language is dicta. (See Vincent Di Lorenzo, New York Condominium and Cooperative Law § 11:8, 2003 Pocket Part, at 139 [2d ed] [noting that Pullman’s “general language did not distinguish between decisions of the board and decisions of the shareholders”].)
The Court of Appeals interpreted Levandusky, as discussed above, to mean that “[i]n the context of cooperative dwellings, the business judgment rule provides that a court should defer to a cooperative board’s determination . . . .” (Pullman, 100 NY2d at 153.) The Court of Appeals recognized in Pullman “that a cooperative board’s broad powers could lead to abuse” that requires courts to “exercise a heightened vigilance in examining . . . the board’s action.” (Id. at 153-154, 158.) Although the Court’s multiple references to cooperative boards might mean *940 that the Court intended the business judgment rule to apply to a board vote, these references, all dicta, have no binding precedential value. (See e.g. Beneficial Natl. Bank v Anderson, 539 US 1, 17 [2003] [Scalia, J., dissenting] [“Dicta . . . have no precedential value . . .”]; Mayorga v Tate, 302 AD2d 11, 12 [2d Dept 2002] [“(D)icta are not binding as a matter of law . . .”].) What a court says is less important than what a court does, and what the Pullman court did was apply the business judgment rule to a shareholder vote, not a board vote.
The Court’s multiple references to cooperative boards arose because Pullman was “expanding the scope of Levandusky [, which] had held that the business judgment rule applies generally to decisions by residential cooperative corporations but left the scope of its holding somewhat ambiguous and the case had not specifically been applied to ejectment actions.” (Keith E. Sealing, 2002-2003 Survey of New York Law, Real Property Law, 54 Syracuse L Rev 1359, 1374 [2004].) Because Levandusky referred to cooperative boards, the Pullman decision, which expanded Levandusky, also referred to cooperative boards.
It is also possible that when the Court of Appeals referred to the “board” in Pullman, it meant a board’s taking actions required by a shareholder vote. Pullman’s proprietary lease was terminated under what is typically known in New York as paragraph 31 (g) of a proprietary lease. Paragraph 31 (g) calls for a shareholder vote to determine whether the “objectionable” tenant’s conduct merits lease termination. If, under paragraph 31 (g), a supermajority of the shareholders votes to terminate a lease, then the board may confirm the decision and begin an eviction proceeding. When the Court of Appeals discussed “the board’s determination” (Pullman, 100 NY2d at 153) or “board decisions” (id. at 155), it might have meant a board whose actions are based on a shareholder vote. Only time will write the perfect ending to this question.
Considerable argument has been made against applying Pullman to a board vote. Some contend, in law journal articles since Pullman, that Pullman reduces shareholder-tenant protection against arbitrary and discriminatory eviction. (See e.g. John Caher, Co-op Boards Given Broad Power to Evict: Business Judgment Rule Applies to Terminations, NYLJ, May 14, 2003, at 1, col 3; Joel E. Miller, Court of Appeals Holds Courts Powerless to Review Cooperative’s Factual Findings, 32 NY Real Prop LJ [No. 1] 4, 8 [2004] [“Whether arrived at by the board or by the shareholders, it cannot be denied that a cooperative’s factual *941 findings are not tested by the safeguards that our law usually requires before someone can be deprived of valuable personal and property rights”]; Menachem J. Kastner and Jarred I. Kassenoff, Cooperatives Authorized to Use Business Judgment Rule in Terminating Shareholder Leases, 75 NY St BJ 32, 38 [July/ Aug. 2003] [noting that tenant advocates worry that Pullman will provide pretext for cooperative boards “to remove shareholders with legitimate ‘warranty of habitability’ issues”]; Vincent Di Lorenzo, The Business Judgment Rule and Fiduciary Obligations Are Applied to Shareholder Decisions in Cooperative Housing Corporations, 32 NY Real Prop LJ [No. 1] 10 [2004] [noting that controversy over Pullman results from business judgment rule’s adoption in context of court’s decision to terminate unit owner’s lease, cancel shares, and evict]; Steward E. Sterk, Jurisprudence Taking Shape on Facts and Law, NYLJ, Sept. 2, 2003, at S10, col 1 [arguing that Pullman was “(p)erhaps the most controversial decision of the Court’s 2002-03 term”].) If Pullman applies to board votes as well as shareholder votes, the courts will, some believe, increasingly erode shareholder-tenant protection, since rather than requiring a majority of the shareholders to consider the shareholder-tenant’s conduct “objectionable” before the cooperative evicts the shareholder-tenant, it will be enough that a board of several members finds it so.
In deciding Pullman, the Court of Appeals noted that the Legislature designed RPAPL 711 (1) to protect shareholder-tenants from eviction upon their landlord’s whim. But the Court was satisfied that “relationships among shareholders in cooperatives are sufficiently distinct from traditional landlord-tenant relationships that the statute’s ‘competent evidence’ standard is satisfied by the application of the business judgment rule.” (Pullman, 100 NY2d at 155.) Relationships between cooperative board members and shareholders, on the other hand, are similar to relationships between landlords and tenants, with twists that reflect the shareholders’ collective will. Because of this, a board vote raises due process concerns that a shareholder vote avoids. Members of a board can exclude an “objectionable” shareholder-tenant from a board’s vote, away from the public eye. Members of a board can silence an “objectionable” shareholder-tenant at a board’s vote. Members of a board might act in bad faith but successfully hide their motives. Members of a board might develop their own definition of objectionable conduct that other cooperative shareholders do not share. Hav *942 ing elected officials — board members — decide questions of obj ectionability prevents the possibility of mob rule that can result from a shareholder vote. Nevertheless, greater potential for abuse arises in a board vote than in a shareholder vote.
Nor do the policy benefits of Pullman apply as strongly when Pullman attaches to a board vote rather than a shareholder vote. One benefit of Pullman is economic: other shareholders bear the litigation costs involved in lengthy court battles to evict objectionable shareholder-tenants through an increase in maintenance fees. Pullman will reduce the litigation costs, lessen maintenance fees, “and consequently increase the overall value of the cooperative apartment.” (Kastner and Kassenoff, supra at 39.) But if potential buyers believe that Pullman diminishes shareholder-tenant protection too severely, they might chose not to buy into cooperative apartments at all, and this will substantially reduce the value of cooperative apartments across New York State.
A second advantage of Pullman is the benefit to the overall quality of living of other shareholder-tenants. As the Court explained, the “concept of cooperative living entails a voluntary, shared control over rules, maintenance and the composition of the community.” {Pullman, 100 NY2d at 158.) If those involved in community living understand what is involved and what they must give, cooperation among cooperators will result. (See Captain’s Walk Homeowners Assn. v Czeczil, 2003 NY Slip Op 51383DJ], *6 [Sup Ct, Suffolk County 2003] [noting Pullman’s utilitarian concept of cooperative living].) That understanding will arise, when no judge decides objectionability, only if all the shareholder-tenants have a say in whose conduct, and what conduct, is objectionable.
Considerations about the benefits and risks of Pullman when applied to a shareholder vote or a board vote have influenced other courts. In Woodrow Ct., Inc. v Levine (NYLJ, Nov. 15, 2002, at 22, col 4 [Hous Part, Civ Ct, NY County]), Civil Court held that Pullman is inapplicable in a summary holdover proceeding when the decision to terminate a shareholder-tenant’s proprietary lease due to objectionable conduct derives solely on a vote of the cooperative’s seven-member board of directors. When Woodrow was decided, the Appellate Division had already applied the business judgment rule in Pullman, although the Court of Appeals had yet to affirm that decision. (See Pullman, 296 AD2d at 124.) The court in Woodrow found that the facts of Pullman were distinguishable from the facts of *943 Woodrow. In Woodrow, like here, the shareholders held no meeting or vote on the respondent’s tenancy. In Woodrow, moreover, the respondents never had an opportunity to defend themselves at the board of directors meeting. These differences distinguished Pullman from Woodrow. (See NYLJ, Nov. 15, 2002, at 22, col 4; accord Feld v 710 Park Ave. Corp., 2002 NY Slip Op 50594[U], *5 [Sup Ct, NY County 2002] [stressing that shareholders made decision to evict in Pullman, but in Feld board’s decision to amend bylaws withdrew from shareholders any right to vote for whom they wished to sit on board].)
Ultimately, this court need not decide whether Pullman applies to this case. Respondent raises successful defenses to applying the business judgment rule. The court finds that petitioner acted outside the scope of its authority and in bad faith in conducting its vote to terminate respondent’s proprietary lease. The court, therefore, cannot apply the business judgment rule and must, instead, engage in competent-evidence analysis. If Pullman does not apply to a board vote, then this court would apply competent-evidence analysis anyway.
IV Phase One of a Pullman Analysis: Applying the Business Judgment Rule
When a petitioner brings a summary eviction proceeding under Pullman, the court must engage in two phases of analysis. During the first phase, the court must decide whether to apply the business judgment rule and defer to the board or shareholder’s vote on whether the shareholder-tenant engaged in objectionable conduct. The court will apply the business judgment rule, and a petitioner will be granted summary judgment, unless the respondent can show that the petitioner acted (1) outside the scope of its authority, (2) in a way that did not legitimately further the corporate purpose, or (3) in bad faith. It is not enough for a shareholder to show how “unpalatable” the impact of the board’s actions have been. The shareholder must show that the board’s actions were improper. (See Park City 3 & 4 Apts. Inc. [Zeronian], 2003 NY Slip Op 50673[U], *3 [App Term, 2d Dept, 2d & 11th Jud Dists 2003] [finding board’s determination to reassign parking spaces proper because landlord possessed authority to do so and because determination had legitimate relationship to cooperative’s welfare].)
Because petitioner cooperative seeks to terminate respondent shareholder-tenant’s proprietary lease, the court must use “heightened vigilance” in assessing the board’s exercise of its business judgment. (See Horwitz v 1025 Fifth Ave., Inc., 7 AD3d *944 461, 462 [1st Dept 2004, mem] [noting that because cooperative did not seek to terminate plaintiffs lease, proceeding did not warrant héightened vigilance in assessing board’s exercise of business judgment].) With the danger inherent in deferring to votes, the court cannot allow the business judgment rule to “serve as a rubber stamp for cooperative board actions, particularly those involving tenancy terminations.” (Pullman, 100 NY2d at 157.)
A. Whether Petitioner Acted Outside the Scope of Its Authority
Respondent raises five defenses to show that petitioner acted outside the scope of its authority. Two of these defenses have no merit: (1) that petitioner did not give respondent a notice to cure, and (2) that the petitioner incorrectly described the apartment. But three of the defenses — (1) that the notice of the board meeting did not give petitioner’s correct name, (2) that no cooperative board officer signed the notice of the board meeting, and (3) that the shareholders did not properly elect the board members — are appropriate defenses under phase one of a Pullman analysis.
In support of his motion for summary judgment, respondent raises as a defense that petitioner did not give him a notice to cure before the board terminated his lease. Petitioner was not required to give respondent a notice to cure. Petitioner bases respondent’s termination notice on paragraph 31 (f) of the proprietary lease. {See petitioner’s notice of motion, exhibit C.) Paragraph 31 (f) addresses a lessee’s objectionable conduct and does not provide a lessee with a chance to cure.
Respondent points to paragraph 31 (c) of the proprietary lease, which addresses unauthorized subletting and gives a lessee 10 days to cause the unauthorized sublessee to vacate the apartment after receiving written notice from the lessor. (Petitioner’s notice of motion, exhibit C.) Respondent argues that petitioner may not bypass the obligation to provide a notice to cure. {See respondent’s affidavit in support of cross motion 1Í 23.) The court disagrees. From petitioner’s perspective, the objectionable conduct in this proceeding stems as much from respondent — ignoring petitioner’s letters, allegedly allowing Holland to violate rules, and renewing Holland’s sublease despite the board’s objections — as it does from respondent’s unauthorized second sublease with Holland. Furthermore, the alleged objectionable conduct, to the extent it occurred, cannot be cured. The apartment has already been damaged, and the other shareholder-tenants have already been upset by the noise, hav *945 ing their heat cut off, and having someone in their building arrested.
A lack of notice to cure is a defense that a shareholder-tenant can raise in some competent-evidence proceedings but never in a proceeding brought under paragraph 31 (f) of a proprietary lease. Under the typical proprietary lease, a cooperative board evicting a shareholder-tenant for objectionable conduct under Pullman is not required to offer a cure period. That is one reason why courts must exercise caution in assuring that cooperatives implement Pullman fairly, especially after nonshareholder votes.
Respondent also argues that the petition’s description of the apartment is improper. This argument, if true, would require dismissal in a New York holdover proceeding because a “petition must provide a specific enough description of the premises occupied by respondent to allow the marshal when executing the warrant of eviction to locate the premises without additional information.” (272 Sherman, LLC v Vasquez, 4 Misc 3d 370, 372 [Hous Part, Civ Ct, NY County 2004].) Paragraph eight of the petition describes the apartment as “[a]ll rooms, First (1st) Floor, Apartment LC in the building.” Respondent alleges that the premises is a “triplex apartment, with a private outdoor garden.” (Respondent’s affidavit in support of cross motion 1i 8.)
Although the descriptions diverge, both petitioner and respondent identify the same apartment. The apartment is contained entirely on the first floor of the building; it simply has three levels on the first floor space it occupies. (See petitioner’s reply affirmation 11 35.) Using either petitioner’s or respondent’s description, a marshal would have no problem locating the apartment. In any event, the petition’s description of the apartment is nearly identical to the description of the apartment respondent used in his verified holdover petition against Holland. (Petitioner’s reply affirmation 11 34.) Judicial estoppel prevents respondent from making this argument.
Respondent further raises as a defense that the notice of the board meeting of February 10 was posted on the letterhead of an entity, and was signed by an entity, whose name does not match petitioner’s name. (See respondent’s affidavit in support of cross motion IT 11.) Respondent argues that the notice is defective and that any meeting held pursuant to the defective notice is without legal effect.
Petitioner contends that because respondent did not object to the notice’s defect before or during the board meeting, respon *946 dent cannot do so now. (See petitioner’s reply affirmation 11 39.) Petitioner points to cooperative bylaw article II, § 5, which provides that “notice of a meeting need not be given to any director who . . . attends the meeting without protesting the lack of notice prior thereto or at its commencement.” (Respondent’s notice of cross motion, exhibit 3.) Petitioner also refers to section 711 (c) of the Business Corporation Law, which further provides that directors need not receive notice under these circumstances. Petitioner’s arguments are not convincing. Respondent is not a director. Bylaw article II, § 5 and Business Corporation Law § 711 (c) do not apply.
If a court is to defer to a board or shareholders’ vote, it is important that the shareholder-tenant who risks eviction be entitled to attend the meeting at which that vote takes place. That is where the shareholder-tenant will have a chance to plead and defend. Petitioner’s name and the name on the notice were similar: Petitioner’s correct name is 13315; the notice was on the letterhead of an entity named “East 15th Street Owners Corp.” and was signed by “[t]he management of 133 East 15th Street Owners Corp.” (See respondent’s notice of cross motion, exhibit 2.) Despite the difference, respondent attended the meeting of February 10. But when the name on the notice is not identical to petitioner’s name, the shareholder-tenant might be misled and legitimately decide not to attend the meeting. The difference in names is a failure on petitioner’s part unfailingly to follow procedures and is evidence that the board acted outside the scope of its authority.
Respondent also supports his summary judgment motion by showing that the meeting notice fails to indicate which cooperative board officer signed the notice. (Respondent’s affidavit in support of cross motion 1Í 12.) Article II, § 5 of the bylaws prescribes that “special meetings shall be called by the president or secretary in like manner and on like notice.” (Respondent’s notice of cross motion, exhibit 3.) Again, petitioner failed to follow procedure. Not everyone may call a meeting that shareholder-tenants must attend or face losing their apartment.
Finally, respondent argues that the shareholders did not in accordance with the bylaws elect the board members who voted at the February 10 meeting. The meetings of May 14, 2003 and August 5, 2002 — at which shareholders should have elected the board members — violated the cooperative bylaws.
To obtain the minutes for those meetings, respondent was forced to begin an action in Supreme Court, New York County, *947 to inspect the shareholder minutes. (Matter of Kennedy v 13315 Owners Corp., Index No. 103413/04.) On March 16, 2004, Justice William Wetzel granted respondent permission to examine the corporate minutes for 2000-2003. (See respondent’s notice of cross motion, exhibit 5.) Had respondent not so moved in Supreme Court, this court would have granted respondent the right to examine the corporate minutes as discovery appropriate in a Pullman proceeding.
The minutes prove that the board did not unfailingly follow procedure in acting to terminate respondent’s proprietary lease. Article II, § 2 of the bylaws provides that shareholders must elect directors at annual meetings of the board or at a special meeting held for that purpose. (Respondent’s notice of cross motion, exhibit 3.) The minutes for the yearly meeting at which shareholders were to elect board members for May 14, 2003 show that no election was held and that no quorum was obtained on May 14. Article I, § 4 of the cooperative’s bylaws provides that the holders of the majority of the cooperative shares make up a quorum and that a quorum is required at election meetings. (Respondent’s notice of cross motion, exhibit 3.)
The board members also held the election meeting of August 5, 2002 without the required notice to the shareholders. The minutes for the meeting of August 5 show that only two shareholders were present. (Respondent’s affidavit in support of cross motion 11 20.)
Petitioner does not dispute these facts. Petitioner argues, instead, that a board’s improper election cannot be raised in a holdover proceeding. Ordinarily, petitioner would be correct; improper election of the board is an inappropriate defense in a competent-evidence case. As petitioner notes, the cooperative’s board can continue to function under the Business Corporation Law even though the shareholders did not elect it in accordance with its bylaws. Business Corporation Law § 602 (b) provides that the “failure to hold the annual meeting on the date so fixed or to elect a sufficient number of directors to conduct the business of the corporation shall not work a forfeiture or give cause for dissolution of the corporation.” Business Corporation Law § 603 (a) provides an exclusive remedy to a shareholder aggrieved by the failure to hold annual elections. An aggrieved shareholder along with “holders of ten percent of the votes of the shares entitled to vote in an election of directors may, in writing, demand the call of a special meeting for the election of *948 directors specifying the date and month thereof.” (Business Corporation Law § 603 [a].) Had respondent wished to object to the failure to hold annual elections, he should have done so shortly after the failed election meetings of August 5, 2002 or May 14, 2003.
But when deciding whether to apply the business judgment rule to a Pullman holdover, the board’s failure to hold annual elections in a proper manner is directly related to whether the board “acted outside the scope of its authority.” {Pullman, 100 NY2d at 155.) A situation in which a board can evict shareholder-tenants who never had a chance to vote for its members is precisely the kind of situation the Court of Appeals wished to avoid in requiring that the cooperative board unfailingly follow procedure. Without election as prescribed by its bylaws, a cooperative board can become authoritarian and heavy-handed, assuming a position reminiscent of a dictatorial landlord from feudal times.
In light of the incorrect notice for the February 10 meeting and the board’s improper election, the court finds that respondent has proven that petitioner acted outside the scope of its authority.
B. Whether Petitioner Acted in Bad Faith
For the court to find that petitioner acted in bad faith, respondent must show evidence of “bad faith, arbitrariness, favoritism, discrimination or malice” on petitioner’s part. (Pullman, 100 NY2d at 157.) Respondent presents evidence to the court that petitioner denied respondent’s right to be heard at the board meeting on February 10, 2004. For petitioner to deny respondent’s right to plead his cause to the board after expressly inviting him to attend the meeting shows malice. It also violates the Court of Appeals’ requirement that a shareholder-tenant have “the opportunity to be heard” before a termination vote. (Id. at 156.)
Respondent describes in great detail the events at the meeting. When respondent’s attorney asked for a chance to present evidence to the board and to discuss the items alleged in the proposed resolution — the resolution that listed respondent’s allegedly objectionable conduct and which was the basis for the board vote — the board rejected respondent’s requests. The president of the cooperative stated at the meeting that respondent was involved in “illegal activity” concerning the apartment. Respondent and his attorney protested that this was false but were not given a chance to explain why. Respondent’s attorney *949 again sought to initiate a discussion of the contents of the items alleged in the board’s proposed resolution. A board member then told respondent and his attorney that there was “no need to discuss the allegations in the resolution.” When the attorney protested again, another board member told him to “shut-up.” (See respondent’s affidavit in support of cross motion H 14.)
Someone then told respondent and his attorney that respondent’s attorney would be allowed to make a statement. Shortly after respondent’s attorney began speaking, he was silenced by petitioner’s attorney, who stated that he was “cut-off.” At this point the board voted and the meeting was adjourned. (See respondent’s affidavit in support of cross motion 1i 14.)
Petitioner does not dispute these facts. Petitioner does not even mention the events that took place before respondent’s attorney began to make a statement. Petitioner contends only, and only in a conclusory way, that respondent’s attorney was silenced because respondent was creating a “disturbance” during respondent’s attorney’s speech. (See petitioner’s reply affirmation 1Í 31.) What that purported disturbance was, petitioner does not say. Conclusory evidence is insufficient to raise an issue of fact under CPLR 3212 (b) about whether respondent was unfairly denied his right to be heard. (See e.g. Castro v New York Univ., 5 AD3d 135, 136 [1st Dept 2004] [“It is well settled that affidavits . . . consisting of mere conclusions . . . are insufficient to defeat a motion for summary relief”]; Rodriguez v Tsui, 233 AD2d 382, 382 [2d Dept 1996] [finding that “the conclusory evidence submitted by the plaintiff in opposition to the motion (for summary judgment) was insufficient to raise an issue of fact”].)
Petitioner also argues that respondent, an attorney, was repeatedly informed about objectionable conduct occurring in the apartment through the letters petitioner sent respondent over a period of almost 12 months. Respondent ignored most of these warnings and letters. Petitioner argues that respondent cannot disregard multiple notices and then feign that no one would listen to him. (See petitioner’s reply affirmation 1i 4.) But at issue is respondent’s opportunity to be heard at the meeting on February 10, before the board voted to terminate his proprietary lease. Whether respondent might have received and ignored earlier notices is irrelevant to whether respondent was denied the right to be heard at the February 10 meeting.
Under the law, the court must assume that petitioner unfairly silenced respondent. Because respondent has successfully raised *950 the third defense to Pullman — that petitioner acted in bad faith — the court cannot apply the business judgment rule and defer to the board’s vote of February 10, 2004. The court must move to the second phase of a Pullman analysis.
V Phase Two of a Pullman Proceeding: Competent-Evidence Analysis
Petitioner argues that even if it acted outside its authority or engaged in bad faith — as respondent has now shown it did — it can evict respondent based on competent evidence that respondent’s conduct was objectionable. Petitioner contends that a competent-evidence analysis will result in the court’s finding respondent’s actions objectionable. (See petitioner’s letter mem of law, dated May 21, 2004, at 2.) Generally speaking, a “pattern of outrageous behavior exhibited or condoned by a tenant may trigger a finding of [objectionable conduct] and subject the occupants to eviction.” (1 Daniel Finkelstein and Lucas Ferrara, Landlord and Tenant Practice in New York § 13:89, at 13-47 [2003] [citing Pullman].')
Petitioner presents a list of allegedly objectionable conduct on respondent’s part. The board found objectionable that (1) respondent ignored the March 5 letter from petitioner, (2) respondent ignored the April 15 letter, (3) respondent did not get back to the board after the meeting of May 14 as he promised, (4) respondent entered into a new sublease with Holland in defiance of the board’s wishes, (5) respondent ignored the September 19 letter and took no actions to evict Holland from the apartment, (6) respondent ignored the October 23 letter, (7) respondent did not try to stop Holland’s renovations, and (8) respondent dumped garbage on the street in front of the building. (See petitioner’s reply affirmation 11 13-29; petitioner’s verified holdover petition, exhibit A.)
Petitioner describes many instances of supposedly problematic behavior, but only a court can decide whether these instances add up to objectionable conduct and whether respondent was responsible for them. The proceeding is adjourned for a trial at which a court can decide whether these instances, individually or in combination, render respondent’s conduct objectionable.
VI. Conclusion
This proceeding — which involves terminating a shareholder-tenant’s proprietary lease through a board vote and not a shareholders’ vote — might or might not be a valid Pullman proceeding. This court has treated the board’s vote as initiating a Pullman proceeding because the end result in this case is the *951 same: The court must use competent-evidence analysis to determine whether respondent’s conduct was objectionable.
If a proceeding is treated as a Pullman proceeding, then in its first phase of analysis the court must decide whether to apply the business judgment rule and defer to the board’s vote. If a shareholder successfully raises one of the three defenses to Pullman — (1) that the board acted beyond its authority, (2) not legitimately furthering corporate goals, or (3) in bad faith— then the court must move to the second phase of Pullman and use a competent-evidence analysis to determine whether the shareholder’s actions were objectionable.
In this case respondent raises two successful defenses to applying the business judgment rule, although he needed to show but one. Respondent has proven that the board acted outside the scope of its authority and in bad faith. The board, improperly elected, denied due process: it gave neither valid notice nor an opportunity to be heard. The court thus declines to apply the business judgment rule under Pullman’s phase one and moves to Pullman phase two. In phase two, the court reviews the evidence under a competent-evidence analysis to decide whether a shareholder’s actions were objectionable. Although petitioner lists many potentially objectionable acts on respondent’s part, only a trial judge can decide whether it all rises to objectionable conduct and whether respondent is responsible for his subtenant’s actions.
Petitioner’s motion for summary judgment is denied. Respondent’s first, second, and third affirmative defenses are withdrawn or denied. Partial summary judgment for respondent on his fourth through eighth affirmative defenses because they concern phase one of a Pullman analysis.

 The New York bar has not yet embraced Pullman!board-vote holdover proceedings. This court has served in New York County’s Cooperative and Condominium Part (Part C) since April 2003, a month before the Court of Appeals decided Pullman. Part C has an average intake of 10 to 25 new proceedings a day. This case is Part C’s first and so far only Pullman case involving a board vote. In fact, Part C has seen only one Pullman case involving a shareholder vote. With its contours awaiting exploration, Pullman has engendered much talk but little action.